174 So.2d 336

Charles I. CARPENTER

v.

STATE.

6 Div. 24.

Court of Appeals of Alabama.

April 13, 1965.

**620**

Charles I. Carpenter, pro se.

Richmond M. Flowers, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

JOHNSON, Judge.

The appellant, Charles I. Carpenter, was indicted by the Grand Jury of Tuscaloosa County for the offense of robbery. The indictment was filed in the Circuit of Tuscaloosa County on November 26, 1963. Counsel was appointed to represent appellant, and he was arraigned on December 2, 1963. Trial was had on February 17 and 18, 1964, upon a plea of not guilty. The jury returned a verdict of guilty as charged in the indictment and fixed punish-ment at twenty years in the State penitentiary. Appellant was adjudged guilty and sentenced in accordance with the verdict on February 18, 1964, and he gave notice of appeal and filed a motion for a new trial on that date. A date for hearing on the motion for a new trial was set by the court, and, after being twice continued by the court, the motion was heard and overruled on July 8, 1964. Notice of appeal from the judgment on the motion was given July 31, 1964. The transcript was filed in this court on September 1, 1964.

On October 22, 1964, appellant filed in this court a "Notice on Direct Appeal," in which he informed the court that "due to circumstances beyond his control he will not be able to perfect his appeal in this cause," and he also requested this court to retain the transcript so as to expedite the court's ruling on a petition for writ of error. He filed a "Petition for Writ of Error" in this court on November 3, 1964, which in form appears to be no more than a brief on appeal.

As a general rule, a writ of error to obtain a review by an appellate court cannot be taken while a prior valid appeal for such purpose is still pending, and if it is attempted, the writ of error will be dismissed unless the appeal was dismissed or abandoned before bringing the writ of error. See 4 C.J.S. Appeal and Error § 27.

The appellant stated in his notice of October 22 that he would not be able to "perfect" his appeal. The appeal was perfected when he gave notice of appeal. McDaniel v. State, 39 Ala.App. 157, 96 So. 2d 319. Appellant apparently meant that he would not be able to file a brief. A valid appeal was pending in this court when appellant filed his "Notice on Direct Appeal" and his "Petition for Writ of Error," and we do not construe the "Notice on Direct Appeal" as expressing an intent to dismiss or abandon the appeal. Therefore, the "Petition for Writ of Error" will be dismissed and the case will be considered on the appeal.

The State's case was based on the theory that appellant and two accomplices, Larry Beck and Troy O'Neal Beck, committed robbery at Allen-Jemison hardware store in Tuscaloosa, Alabama, on Sunday, October 13, 1963. The State proved that a safe or vault in this store was broken open on that date and that approximately $1,709.00 in currency, cash and coins was taken therefrom. The alleged accomplices were tried and convicted of this robbery prior to appellant's trial. They were tried under a plea of guilty according to their own testimony.

The State's first witness was Mr. A. C. Cade, President of Allen-Jemison Company. His testimony was substantially as follows: On Sunday, October 13, 1963, at approximately 10:30 A.M., he went en route from Sunday School to the post office and then to the Allen-Jemison store. He entered the store and walked up a stairway leading to a second-story office area where a safe, or vault, was located. After taking a few steps at the head of the stairway he heard someone behind him say, "Stop and throw your hands up." He turned and faced a man behind a counter who held a shotgun, pointed at Mr. Cade, and who had a "handkerchief or rag around his face, covering up to the bridge of his nose." Cade faced the man with the gun for a "few seconds" before he was ordered to turn around and lie down, which he did. While lying on the floor he heard the man with the gun and another man whom he had seen standing behind a post, whispering to each other. Upon being ordered to do so, Cade stood up and walked into an ante-office, where he was again ordered to lie on the floor. He faced both of the men for "five or six seconds" as he walked to the office and he notice that a "strip was off the vault." Upon lying down the second time he was blindfolded and his feet and hands were tied together with rope. He was approximately twenty feet from the vault. He remained on the floor for an hour and a half to two hours, during which time he heard hammering noises, and what

he thought was "chiseling going on inside the vault." After hearing noises that sounded like the men were leaving the store, Cade managed to free himself from the ropes and call the police. Police officers arrived at the store "immediately," or about 12:30 or 12:45 P.M.

Cade testified on direct examination that appellant was the man in the store who wore the mask and who held the gun. On cross-examination he stated that the man with the gun had "light, sandy hair, long." He testified that he told someone in the Sheriff's office after the robbery that the man with the gun had "long and dark" hair. He also testified that he could not identify appellant in a police line-up shortly after the robbery, but that after having an opportunity to observe and study appellant during the Beck trial, it was his "best judgment" that appellant was the man in the store with gun.

Larry Beck, one of the alleged accomplices, testified that he participated in the robbery, that his brother Troy drove him to a point near the Allen-Jemison store on the morning of the robbery, and that he and another man, whom he refused to identify, entered the store and broke open the safe therein. When asked if he had been threatened with bodily harm if he testified in this case, he replied, "To a certain extent." He did not say who had threatened him. Larry claimed that he was "hopped up on dope" at the time of the robbery. He testified that he did not hold a gun on Mr. Cade or tie him up, but that he was present and saw these things done. His testimony presents a contradiction as to whether his brother Troy was the other man who entered the store. However, he testified that when he left the store he telephoned his brother to come get him, and that his brother did come get him. Larry further testified that appellant had been living in his house for about a week prior to the robbery, that after the robbery the money taken from the Allen-Jemison safe was divided at his house, and that appellant was given $570.00 of this money.

· Troy Beck testified that he drove his brother Larry and another man, whom he refused to identify, to a point near the Allen-Jemison store on the morning of the robbery. He refused to say who the other man was, "on the ground that it may tend to danger my life." He testified that no direct threats had been made on his life. After letting his brother and the other man out of his car near the Allen-Jemison store, Troy drove to Larry's house, reaching there about 7:00 to 8:00 A.M. He testified that he did not enter the Allen-Jemison store at any time on the day of the robbery. He testified that he returned to the vicinity of the Allen-Jemison store about 12:00 or 1:00 P.M. after receiving a telephone call from Larry, who asked him to come get him. He stated that he picked up his brother Larry and the same man he had driven to the store area earlier in the morning. Troy further testified that about 45 minutes after he picked up the two men, his brother Larry gave him over $500.00 at Larry's house.

The appellant and Larry Beck were arrested by officers of the Tuscaloosa Police Department at approximately 2:00 P.M. on the day of the robbery. The arrests were made on a street in the City of Tuscaloosa after the officers stopped an automobile in which appellant, Beck, and Beck's wife and two children were traveling. The officers searched the appellant's person at the time of his arrest and seized over $500.00 in cash found in his pockets.

It was admitted in evidence that appellant escaped from the county jail prior to his trial. He was apprehended in another county and returned to jail.

Appellant voluntarily testified in his own behalf on advice of counsel. He stated on direct examination that he was 43 years of age, that he has spent 23 years in prison for crimes of burglary, and that he considered himself an expert locksmith. On cross-examination he testified without objection that he had "cracked" between 75 and 100 safes in his lifetime for the purpose of stealing money. He denied taking part in the robbery at the Allen-Jemison store.

He testified that he, Larry Beck, and Troy Beck drove to town and ate breakfast at a restaurant on the morning of the robbery, and that they returned home immediately after having breakfast. Appellant offered no evidence to show where he was when the robbery occurred.

Counsel was appointed to represent appellant before his arraignment on December 2, 1963. On February 15, 1964, two days prior to the date set for trial, appellant informed the court by letter that he did not desire to be represented by counsel appointed by the court, that he could best defend himself, but that he would "accept other help." On February 17, 1964, the day set for trial, the trial judge, at the request of appellant, appointed new counsel of the appellant's own choosing to assist previously appointed counsel, and gave appellant an opportunity to confer with new counsel. After conferring with his new attorney, and after the new attorney announced ready for trial, appellant stated that he was ready to proceed to trial with both court-appointed attorneys, but then he moved for a continuance on the ground that new counsel did not have sufficient time to prepare for trial. The trial judge did not rule on the oral motion, but stated that he would give appellant further time to confer with counsel, and that after conferring with counsel appellant could make any motion he desired. After appellant conferred with counsel the second time, the following transpired:

"THE COURT: The State has announced ready.

"MR. NICOL: Yes, sir.

"THE COURT: And the Defendant has announced ready for trial. We will now go in and proceed with the trial, if you gentlemen are ready. Have you sufficient time to consult with your client?

"MR. FRENCH [Appellant's counsel]: Yes, sir.

"THE COURT: Any other consultation you want with your attorneys?

"MR. CARPENTER: I guess not, Your Honor."

▮▮ It is a general rule that when no ruling has been had or invoked on an objection or a motion by an accused in the trial court, nothing is presented for review by the appellate courts. For numerous authorities see 7 Ala.Digest, Criminal Law, ☞1045. Inasmuch as there was no ruling had or invoked on the appellant's oral motion for a continuance, there is nothing presented here for review. If the matter of the court's failure to grant a continuance was before us for review, we would be constrained to hold that there was no abuse of discretion. See Ex parte Craft, 41 Ala. App. 519, 138 So.2d 266; Haney v. State, ante p. 94, 153 So.2d 652.

▮ Appellant was not represented by counsel at the hearing on his motion for a new trial or in this appeal. He informed the trial judge by letter dated May 23, 1964, that he no longer desired to be represented by the attorneys appointed by the court. On June 11, 1964, appellant appeared in open court, and after being informed of his right to counsel and the duty of the court to appoint counsel, the appellant stated to the court that he was aware of his right to counsel, that he desired to waive that right, that although he was financially unable to employ counsel he did not want the court to appoint any other counsel, and that he was going to represent himself in all further proceedings in the trial court and in the appeal of this case. Thus, appellant expressly waived right to counsel in the hearing on the motion for a new trial and in the appeal of this case, and no error can be predicated on a denial of such right.

Before any trial proceedings were held appellant filed the following written motion to suppress and exclude certain evidence:

"Comes now the defendant, Charles I. Carpenter and moves the Court to suppress and exclude the illegal evidence seized at the time of defendant's arrest on to-wit: October 13, 1963, in violation of his constitutional rights guaranteed by the 4th and 14th Amendment to the Constitution of the United States of America, and to order same said illegally seized evidence returned forthwith to his custody, dominion and control. Said illegal evidence consisting of to-wit: a paper bag of clothes, a pair of gloves, $685 in legal U. S. Money, and other articles now unknown to the defendant the said Charles I. Carpenter."

The following testimony was taken in the absence of a jury:

"THE COURT: Let the record show that the defendant files a Motion to suppress and exclude certain evidence which he sets out therein is illegal, and the Court now marks said Motion filed and announces that he is ready to hear the Motion.

"MR. FRENCH: May it please the Court, comes now the Defendant, Mr. Charles I. Carpenter—

"THE COURT: I have already marked that filed. That will be in there. I will be glad to hear you, whatever you want on that.

"MR. FRENCH: He can probably tell the story better than I can, but he wasn't a suspect, and it is our contention at the time of his arrest the police were rounding up anybody remotely connected with the robbery. They figured the Becks were connected with it, and he had had a room there at their house, and while driving a borrowed car they arrested him and took his belongings, and life savings and incarcerated him illegally, and we request this evidence taken from him in violation of his Constitutional rights be returned to him and not be allowed to come out in the trial today, and that no part of this evidence which was taken from him was in any way connected or remotely connected with the articles, various articles, taken from the Allen-Jemison Hardware Company of Tusca-

loosa. Anything you want to add to that? .

"MR. CARPENTER: I think that covered it.

"THE COURT: You submit there on your motion and in your statement, Mr. Robert French, as Attorney for Defendant?

"MR. FRENCH: Yes, sir.

"THE COURT: Anything else for the Defendant?

"MR. FRENCH: No, sir.

"THE COURT: All right, I will overrule the motion.

"MR. FRENCH: We reserve an exception."

During the trial the arresting officer, Detective Rufus Hutchins, was called as a witness by the State, and testified on direct examination, without objection, that he and three other officers arrested appellant and Larry Beck on a street in Tuscaloosa on October 13, 1964, that he searched the appellant's person at that time and seized $501.17 found in his pockets, that the money was kept in the property room of the Tuscaloosa Police Department until the trial, that he had the money in a brown envelope in front of him, and that he had counted the money. *After* this testimony was given, the appellant interposed the following objection:

"We want to go on record as making an objection to anything concerning this money, since we filed the motion before the trial that this was taken under illegal search and seizure."

The objection was sustained. Immediately thereafter the money was marked "Exhibit 7" and offered in evidence by the State. The Court sustained the appellant's general objection to its introduction in evidence.

Mr. John Weaver, Vice-President and Secretary of Allen-Jemison Company, was called as a witness by the State subsequent to Officer Hutchins. During direct examination of this witness the money ("Exhibit 7") was displayed before the jury, and the witness identified bank bands on the money and stated that money wrapped in bands from the same bank and with the same date thereon had been in the safe at the Allen-Jemison store. No objection to the display of this money or to the testimony of this witness was made on the specific ground that the money was obtained by unreasonable search and seizure. When the State again offered the money in evidence the court sustained a general objection to its introduction.

■ It appears from the record that the money, taken from appellant's person at the time of his arrest was not introduced as physical evidence. We are clear to the conclusion, however, that Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, requires the exclusion not only of physical evidence obtained by unreasonable search and seizure, but also oral testimony concerning such evidence, which is also obtained as a result of the unreasonable search and seizure.

■ While a defendant in a criminal prosecution has the right to insist that only competent evidence be introduced against him, he may waive that right by failing to make timely and proper objections.

■ A pretrial motion is not necessary, and an objection may be made for the first time when illegal evidence is offered at the trial. Brown v. State, 277 Ala. 108, 167 So.2d 291.

■ However, where an accused does seek to suppress evidence by a preliminary motion, the trial judge cannot be held in error for overruling such motion if the accused, in a contested proceeding, fails to adduce testimony tending to prove that the physical evidence which he seeks to suppress was in fact obtained by an invasion of his Constitutional right to privacy. The appellant did not establish by testimony at the preliminary hearing that the evidence

which he sought to suppress was obtained by an invasion of his privacy, although he was given an opportunity to do so. Therefore, we conclude that the trial court properly overruled the pretrial motion to suppress.

 Even where a motion to suppress evidence on the ground that it was obtained by unreasonable search and seizure has been denied before trial, it is the duty of the trial court to entertain a proper objection to its admission or a motion for its exclusion during the trial if it appears that such evidence was obtained by an invasion of the accused's right to privacy.

Although there was a ruling adverse to the appellant on his pretrial motion to suppress, to which he excepted, appellant interposed no objection at the trial to the testimony of the arresting officer concerning the money taken from appellant's person, until after such testimony was given.

Annotation on the necessity of raising an objection at the trial after an adverse ruling on a pretrial motion to suppress appears in 50 A.L.R.2d at 591. We note that the authorities are divided.

The Federal rule is stated as follows in Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321:

"* * * It is quite true generally that the overruling of a pretrial motion to suppress the use at the trial of particular evidence preserves the point and renders it unnecessary again to object when such evidence is offered at the trial. * * * But the rule is one of practice and is not without exceptions, nor is it to be applied as a hard-and-fast formula to every case regardless of its special circumstances."

 We are of the opinion that the better rule is that, as a matter of law and procedure, the accused's failure to object to the admissibility of evidence at the time it is presented by the prosecution constitutes a waiver on the part of the accused, and the fact that preliminary motions for suppressing evidence and quashing warrants or affidavits have been overruled by the court does not relieve the accused or his counsel from the duty of objecting at the trial to the admission of evidence on the ground that it was obtained by unreasonable search and seizure. See Robertson v. State, 94 Fla. 770, 114 So. 534; Webb v. State, 33 Okl.Cr. 77, 242 P. 784; State v. Berry (Mo.), 253 S.W. 712; Dukes v. Commonwealth, 196 Ky. 60, 244 S.W. 74; State v. Mitchell, 119 N.C. 784, 25 S.E. 783, 1020; State v. Kemp, 95 Ariz. 60, 386 P.2d 657, 658. Thus, no error resulted here in the admission of the testimony of the arresting officer, Hutchins, concerning the money taken from appellant's person, since such evidence was introduced prior to appellant's objection.

Even if we followed the Federal rule (to which Cates, J., inclines), we would hold that under the special circumstances of this case an objection at the trial was necessary to preserve error for review in this court, since appellant failed to establish by any testimony whatsoever in the hearing on his pretrial motion that this money was obtained by an invasion of his right to privacy.

 Although appellant objected to "anything concerning this money" after Officer Hutchins testified that he had taken the money from appellant's person, this did not, under the circumstances of this case, relieve appellant of the duty of objecting to evidence offered subsequent to this objection concerning the money, on the specific ground that the money was obtained by unreasonable search and seizure. Thus, no error can be predicated on the introduction of Mr. Weaver's testimony, since it was not objected to on the specific ground that it was obtained by unreasonable search and seizure. Further, we are of the opinion that appellant's rights were not violated by the introduction of Weaver's testimony, since the fact that the money was obtained by a search of the appellant's person at the

**626**

time of his arrest was put in evidence prior to this evidence, without objection.

We conclude that no error resulted in the introduction of evidence which allegedly was obtained by unreasonable search and seizure.

▆▆▆ During direct examination of Officer Hutchins, a photograph portraying the vault area in the Allen-Jemison store was introduced in evidence over the appellant's objection. Officer Hutchins testified that he made the photograph with a Graphic Camera on the day of the alleged robbery, and that the photograph accurately and correctly portrayed the scene of the alleged robbery as he saw it on that day. We consider this testimony a sufficient predicate and also that the scene of the crime was a pertinent inquiry in the case, and that, therefore, the photograph was properly admitted in evidence. See Powell v. State, 33 Ala.App. 323, 33 So.2d 399; Payne v. State, 261 Ala. 397, 74 So.2d 630.

▆▆▆ The testimony of the victim of the alleged robbery which was offered to establish the identity of the appellant as one of the alleged robbers presented a jury question on that matter. Although this witness did not positively identify the appellant, did not observe appellant under ideal conditions, failed to identify him in a police line-up, and although there were minor discrepancies in his description of the alleged robber, these matters, in our opinion, went to the weight of the testimony and did not destroy its value for the purpose of establishing identity. See 23 C.J.S. Criminal Law §§ 864, 920.

We have examined the entire record in this case as required by law, and having found no error therein, this cause is due to be and the same is hereby

Affirmed.

PRICE, P. J., not sitting.