215 So.2d 437

**Arthur JONES, Jr.**

v.

**STATE of Alabama.**

I Div. 5I8.

Supreme Court of Alabama.

Oct. 31, 1968.

Jas. A. Brice, Jackson, for appellant.

MacDonald Gallion, Atty. Gen., and Lloyd G. Hart, Asst. Atty. Gen., for the State.

LAWSON, Justice.

On February 6, 1968, a grand jury of Clarke County returned an indictment against Arthur Jones, Jr., for the robbery of Bryant McDonald.

Upon his arraignment Jones pleaded not guilty.

A petit jury of Clarke County returned a verdict of guilty and imposed the death penalty. Judgment and sentence were in accord with the verdict.

The appeal here is under the automatic appeal law applicable to cases in which the death penalty is imposed.—Act 249, approved June 24, 1943, General Acts 1943, p. 217, carried in the 1955 Cum. Pocket Part to Vol. Four, 1940 Official Code, and in the 1958 Recompiled Code as Title 15, § 382(1) et seq.

Section 10 of Act 249, supra (§ 382 [10], Title 15), provides:

"In all cases of automatic appeals the appellate court may consider, at its discretion, any testimony that was seriously prejudicial to the rights of the appellant, and may reverse thereon even though no lawful objection or exception was made thereto. The appellate court shall consider all of the testimony, and if upon such consideration is of opinion the verdict is so decidedly contrary to the great weight of the evidence as to be wrong and unjust and that upon that ground a new trial should be had, the court shall enter an order of reversal of the judgment and grant a new trial, though no motion to that effect was presented in the court below."

The evidence shows that about eight o'clock on the night of December 22, 1967, McDonald, a sixty-eight-year-old man, was rendered unconscious by a blow on the head delivered by an assailant after the assailant had inquired of McDonald, "Where is your gun?"

The attack occurred on the premises of M. W. Smith Lumber Company in Jackson, Alabama, where McDonald worked as a night watchman. After the attack McDonald's billfold, containing approximately eight dollars and some papers, was missing. The billfold was later found "beside the road going by the depot at Jackson" at a point approximately "a half a quarter mile" from the point where "this beating occurred." When found, the billfold contained two checks but "no folding money."

The only evidence tending to connect Jones, the appellant, with the robbery is the testimony of McDonald, who stated that shortly before he was attacked he saw "a bulk of a small fellow; a colored boy," who

said, "Where is your gun?" and then "knocked me out." The only testimony of McDonald which might be said to constitute an in-court identification of the appellant as being the guilty party were his statements to the effect that the man sitting at a table was of the same size, build, and color as the assailant.

McDonald also gave testimony which the State contends constitutes an out-of-court identification of the appellant as being the person who assaulted and robbed McDonald. In substance this testimony is as hereinafter summarized. Approximately two months or more after the robbery, McDonald saw the appellant in jail, heard him speak and recognized his voice as being that of the man who had assaulted and robbed him. Although McDonald saw the appellant in a jail cell, the appellant did not talk in the presence of McDonald. When McDonald heard the appellant talking, he, McDonald, was in a cell next to that occupied by the appellant. McDonald did not recall what the appellant said on that occasion, but stated that the appellant was talking to some person not identified in the evidence.

Although no objection was interposed by counsel appointed to represent appellant at the trial below in regard to the out-of-court voice identification testimony, we are required by the provisions of § 10 of Act 249, supra, to determine whether such testimony was admissible and, if not, whether it was seriously prejudicial to the rights of the appellant.

Since the voice identification was made after June 12, 1967, and since it does not appear from the record that the attorney who had previously been appointed to represent the appellant was present at the time the voice identification was made or that he had notice of the proposed identification proceedings, we must consider whether the voice identification evidence was admissible in view of the holdings of the Supreme Court of the United States in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178; and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, all decided on June 12, 1967.

In *Wade* the question was whether courtroom identifications of an accused at trial are to be excluded from evidence because the accused was exhibited to the witnesses before trial at a post-indictment lineup conducted for identification purposes without notice to and in the absence of the accused's appointed counsel and where no waiver appeared. The question was answered in the affirmative on the ground that the lineup, held as it was without notice to and in the absence of Wade's appointed counsel, was a violation of Wade's rights under the Sixth Amendment to the Constitution of the United States.

True, in *Wade* a "lineup" or "showup" was involved. We are not here involved with a "lineup" or a "showup," but there is language in *Wade* which to us clearly indicates that the holding in that case applies where the suspect alone is presented to the identifying witness. We quote:

"The pretrial confrontation for purpose of identification may take the form of a lineup, also known as an 'identification parade' or 'showup,' as in the present case, or presentation of the suspect alone to the witness, as in Stovall v. Denno, supra. It is obvious that risks of suggestion attend either form of confrontation and increase the dangers inhering in eyewitness identification. * * *

\* \* \* \* \* \*

"* * * And the vice of suggestion created by the identification in Stovall, supra, was the presentation to the witness of the suspect alone handcuffed to police officers. It is hard to imagine a situation more clearly conveying the suggestion to the witness that the one presented is believed guilty by the police. * * *"
388 U.S. 229, 234, 87 S.Ct. 1933)

In *Gilbert* the court said, among other things, as follows:

"The admission of the in-court identifications without first determining that they were not tainted by the illegal lineup but were of independent origin was constitutional error. United States v. Wade, supra. We there held that a post-indictment pretrial lineup at which the accused is exhibited to identifying witnesses is a critical stage of the criminal prosecution; that police conduct of such a lineup without notice to and in the absence of his counsel denies the accused his Sixth Amendment right to counsel and calls in question the admissibility at trial of the in-court identifications of the accused by witnesses who attended the lineup. * * *" (388 U.S. 272, 87 S.Ct. 1956)

In *Stovall* there was a federal habeas corpus proceeding attacking collaterally a state criminal conviction for the same alleged constitutional errors in the admission of alleged tainted identification evidence that was before the Supreme Court of the United States on direct review of the convictions involved in *Wade* and *Gilbert*. In *Stovall* the police, without affording Stovall time to retain counsel, arranged with the victim's surgeon to permit them to bring Stovall to her hospital room the day after surgery had been performed. The victim identified Stovall from her hospital bed after being asked by an officer whether he "was the man" and after Stovall repeated at the direction of an officer a "few words for voice identification." The Supreme Court of the United States did not apply the rule enunciated in *Wade* and *Stovall* because of the peculiar circumstances of that case in that the record revealed that the showing of Stovall to the victim in an immediate hospital confrontation was imperative because of the victim's critical physical condition. The court did not decline to apply *Wade* and *Gilbert* because those cases involved lineups and the *Stovall* case did not. In fact, the opinion in *Stovall* contains the following statement: "The practice of showing suspects singly to persons for the purpose of identification, and not as a part of a lineup, has been widely condemned." See Rivers v. United States, United States Circuit Court of Appeals, Fifth Circuit, 400 F.2d 935, decided on September 16, 1968.

In view of the holdings in the *Wade, Gilbert* and *Stovall* cases, we are constrained to the conclusion that McDonald's voice identification of appellant as the person who assaulted and robbed him was not admissible because such identification was made without notice to and in the absence of counsel previously appointed to represent the appellant.

We are aware of the fact that in *Wade, Gilbert* and *Stovall* the court was concerned with visual identification. However, we entertain the view that no logical distinction can be made between a visual identification and one made by listening to the voice of a suspect who had been previously pointed out to the identifying witness by a law enforcement officer who had the suspect in custody.

We think it obvious that this evidence was highly prejudicial to this appellant in view of the fact that the only other evidence which in any wise tends to connect him with the commission of the crime was the testimony of McDonald to the effect that the appellant was of the same size, build and color as his assailant.

The judgment of the trial court is reversed and the cause is remanded.

Reversed and remanded.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.