253 So.2d 362

**Hillard DAWSON**

v.

**STATE.**

**8 Div. 69.**

Court of Criminal Appeals of Alabama.

Oct. 5, 1971.

Donald E. Holt, Robert H. McKenzie, Florence, for appellant.

MacDonald Gallion, Atty. Gen., and Lloyd G. Hart, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

Appellant stands convicted of robbery, with a penitentiary sentence of thirty years.

The charge grew out of an armed hold-up of one Buey Stokes on January 12, 1969, at his rural home in Lawrence County, Alabama.

Appellant's first insistence is that Stokes' in-court identification of defendant was the product of an illegal confrontation.

The testimony taken at the pretrial hearing of the circumstances surrounding Stokes' identification of accused and of the confrontation is as follows:

Mr. Stokes testified that about ten o'clock of the Sunday morning in question three men came to his home in an automobile. Two of the men got out of the car and asked for a drink of water. After the

water was drawn from the well they talked for a few minutes and Stokes started into the house. A pistol was drawn and Stokes was pushed into the house and tied in a chair where he remained for several hours while the men ransacked the house. During the search Mr. Stokes was burned about the legs, arms and face with a poker in an effort to force him to disclose the whereabouts of his money. The house was small and most of the search was centered in the room where he was tied. The men were in plain view, were not masked and the victim had a good opportunity to observe them while they were in the house, as well as at the time they were outside at the well. The men left him tied to the chair and he was finally able to free himself after dark.

On February 1, 1969, the sheriff placed Mr. Stokes in a bedroom at the jail. This room had a door leading to the hall and the door had a glass window about ten inches square. The sheriff told him he had arrested Almon McCary, one of the suspects, but did not tell him defendant would be brought to the jail for Stokes to observe. By looking through the little glass window in the door he saw Dawson when he was brought into the jail and as he walked around in the hallway; that he did not sign an affidavit or any other papers until after he had viewed defendant at the jail.

Mr. Stokes stated that a day or two after the robbery and before he saw them at the jail he told the sheriff that one of the robbers was Almon McCary or his twin brother, and the other was Simmie Dawson's son. A day or two later he told the sheriff and Mr. Hancock it was Hillard Dawson; that he told the District Attorney, Mr. Burney, that he was satisfied the men who came to his house were the defendant and Almon McCary, but told the sheriff that while he was satisfied McCary was one of the men, he would like to see him to be positive before he swore out a warrant for his arrest, and his reason for being at the jail was to identify McCary

and he didn't know that Hillard Dawson was to be at the jail.

Sheriff Rutherford testified he went to Mr. Stokes' home the next day after the robbery. At that time Stokes did not tell him Hillard Dawson and Almon McCary were the men who robbed him, but did give him a general description of the men and the automobile. About the third day after the robbery Stokes told him it was McCary and Simmie Dawson's son and that something was wrong with one of Dawson's eyes, that it was watering a little, and after that he told him it was Hillard Dawson. From January 15, until February 1st., Mr. Stokes had said he was certain in his mind that the men who robbed him were Almon McCary and this defendant, but if he could see them again he would know positively they were the ones.

Honorable Billy C. Burney, Judge of the 36th Judicial Circuit, testified he was district attorney for Lawrence County in January, 1969; that he had known Mr. Stokes all his life and it was his understanding Mr. Stokes lived alone; that after the sheriff reported the robbery Mr. Stokes asked him to come to his house and he went there two or three days after the robbery. The house was in a badly damaged condition. Mr. Stokes described the robbers and told him their names were Almon McCary and Hillard Dawson. At no time did Mr. Stokes say the two people were anyone other than Almon McCary and Hillard Dawson. Mr. Stokes said the men carried articles out of the house and he heard automobiles drive away and it was his understanding that in their investigation the officers were trying to find out who the other people were and to eliminate any possibility of doubt as to the guilt of defendant and McCary.

On cross examination defense counsel asked:

"Premised on that last question of Mr. Pettus and then your last answer that you gave in response to it, Judge Bur-

ney, is it—Am I correct in assuming that prior to the identification at the jail of Hillard Dawson on February the 1st, 1969, it was your understanding that there was some doubt as to the identity of either one or both of these suspects?

The witness answered:

"No, there wasn't any doubt in Mr. Stokes' mind. Doubt, if there has been any, would have existed in the officers' 'minds in investigating the case. I don't know if you could ever call it a doubt. Again, in order to clarify this, I would have to explain to you the whole investigation and all."

The defendant testified that when the officers came to his house on February 1st and said the sheriff wanted him at Moulton for questioning, he asked, "What for?" The officers said they didn't know and he asked if they had a warrant for his arrest and they told him no, but he would have to come with them. One of the officers rode with defendant in his car and during the ride no mention was made of the Stokes robbery and defendant was not told the reason for his being taken to Moulton. He never saw Stokes at the jail and did not know he was concealed in the room. The defendant remained in the lobby for about twenty-five minutes after which time the sheriff came in and told him he was charged with robbery.

The defendant also introduced testimony tending to show that Stokes had said one of the persons who robbed him was either Hillard or his twin brother Willard Dawson and that he did not have a brother named Willard Dawson.

■ The federal cases hold that in circumstances such as presented here the question is whether the confrontation was so necessarily prejudicial as to be a denial of due process of law and that whether there was a violation of due process depends upon the totality of the surrounding circumstances. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230.

■ But these cases also hold that even if the confrontation is found to be violative of due process, the in-court identification is not tainted if it is shown to have a source independent of the confrontation. Clemons v. United States, supra; Bryson v. United States, 136 U.S.App.D.C. 113, 419 F.2d 695.

■ Despite defendant's contention that the confrontation was so improper as to be violative of due process, the testimony here shows that the victim of the robbery had ample opportunity to observe the robbers and such testimony is sufficient to establish an independent source for his in-court identification.

■ At the trial the victim, without objection, positively identified the defendant as one of the robbers. His answers to questions on cross examination that he did not notice the type of clothing worn by defendant at the time of the robbery, and that although he had known defendant all his life, he had not seen him for several years, were matters going to the weight to be given by the jury to the in-court identification. Clemons v. United States, supra.

■ Defense counsel argues in brief that the court erred in sustaining the state's challenges for cause on the grounds that they stated they had a fixed opinion against capital punishment. In Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797, the court held that its ruling in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct., 1770, 20 L.Ed.2d 776, does not apply where the death penalty is not imposed. See also, Seals v. State, 282 Ala. 586, 213 So.2d 645; Denton v. State, 46 Ala.App. 34, 237 So.2d 518. Moreover, the record shows that the court's examination of the jurors complied with Witherspoon. See Jackson v. State, 285 Ala. 564, 234 So.2d 579.

Three or four dollars were taken from a pair of pants belonging to Mr. Stokes, as well as silver coins, a flashlight, a .45 Caliber automatic pistol, and 12 gauge shotgun, binoculars and cartridges, but the robbers did not find some eighteen hundred dollars hidden under a rug.

The defendant testified in his own behalf. He denied that he was at the Stokes home or that he participated in the robbery in any way. His defense was an alibi. He testified and offered corroborative testimony that he was in Town Creek at the time of the alleged robbery.

The testimony presented questions for the determination of the jury. The general affirmative charge was properly refused. There was no motion for a new trial.

I have carefully searched the record and find no reversible error. The judgment is affirmed.

Affirmed.

HARWOOD, Supreme Court Justice (concurring).

Section 13 of Act No. 987, 1969 Acts of Alabama, p. 1744, (See 1958 Recompiled Code of Alabama, Title 13, Section 111(13), pocket part) provides that where one of the judges of the Courts of Appeal is disqualified, and the two remaining judges are divided as to the decision of a case, such fact must be certified to the Chief Justice of the Supreme Court, and he shall appoint a justice of the Supreme Court to sit with the individual members to consider and decide the case.

Judge Annie Lola Price, Presiding Judge of the Court of Criminal Appeals, certified to the Chief Justice that in the case of Hillard Dawson v. State, 8 Div. 69, pending in the Court of Criminal Appeals, one of the judges of the Court of Criminal Appeals (Judge Almon) was disqualified from sitting in the case, and the remaining two judges were divided as to a decision of the case.

It was requested that the Chief Justice appoint a justice of this court to sit with the divided members to consider and decide the case.

Pursuant to such certification and request, the Chief Justice on 31 August 1971, appointed the writer to sit with the divided members of the Court of Criminal Appeals to consider and decide the above mentioned case.

Apparently the division between the two judges of the Court of Criminal Appeals relates to two points, (1) whether the in court identification of the appellant by Stokes as one of the robbers was constitutionally erroneous, and (2) whether the absence of objections to the questions eliciting the in court identification by Stokes constituted a waiver of objection to such testimony since the court had previously denied appellant's pre-trial motion to suppress any evidence of identification of appellant by Stokes that might be offered during the trial.

In her original opinion Judge Price has fully and fairly set out the facts relating to Stokes' observation of the appellant at the jail as developed at the pre-trial hearing on the motion.

It is the contention of counsel for the appellant that error necessitating a reversal of this judgment resulted from the in court identification in view of the fact that Dawson was without counsel when he was observed by Stokes. In support of this contention counsel relies upon United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L. Ed.2d 1178.

These cases are to the effect that an in court identification of an accused by a victim is inadmissible where there has been a preceding police line-up identification, unless the prosecution is able to establish by clear and convincing evidence that the in court identification was not the fruit of a suspect pre-trial identification, but was in

fact based upon the victim's observation of the suspect other than the line-up identification.

I would emphasize that Stokes' opportunity to know Dawson and McCary was substantial. Not only did he observe the two robbers at the well, but also during the rather lengthy course of the robbery. Additionally, he had known the two men in prior years. From virtually the inception of the investigation Stokes identified Dawson and McCary to Sheriff Rutherford, to State Investigator Hancock, and the then District Attorney William Burney. This identification was both by description of his assailants, and by name.

From the evidence submitted during the pre-trial hearing on the motion, no rational basis can be found tending to show that Stokes was influenced by any improper suggestion by the investigating officers as to the identification of Dawson and McCary. There was no unfair focussing of Stokes' attention on Dawson and McCary as the persons believed by the investigators to be the persons guilty of the robbery. Any focussing of attention on Dawson and McCary was in truth by Stokes to the officers. There simply was no suspect pretrial identification growing out of any action by the investigating officers. This being so, the court properly denied appellant's motion to suppress the evidence relative to Stokes' identification of Dawson.

The facts shown upon the hearing on the pre-trial motion removes this case from the influence of *Wade*, and *Gilbert*, supra.

No need arises to consider whether the court's action in denying the pre-trial motion to suppress the evidence of Stokes going to the identification of Dawson obviated the need to interpose an objection to such testimony when offered during the jury phase of the trial. Even had an objection been interposed, the court properly should have overruled the same.

I concur in the opinion and conclusions reached by Judge PRICE in her affirmance of this judgment.

CATES, Judge (dissenting). ·

Originally this appeal was assigned to the Hon. L. S. Moore, supernumerary Circuit Judge sitting as a coadjutor by designation of the Chief Justice.

I concurred in Judge Moore's remanding opinion which, however, is not reported by reason of the instant majority decision. Presiding Judge Price did not concur. Judge Almon at nisi prius had held the preliminary hearing and hence recused himself.

I

My basic reason for disagreement is that to me the custodial presentation of Dawson to Stokes in the Lawrence County jail had such an aura of suggestibility that the absence of counsel prima facie tainted the in-court identification. See Jones v. State, 283 Ala. 221, 215 So.2d 437.

Unlike the almost death bed presentation found to be imperative in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, here there was no reason shown for rushing Dawson through a summary detention and a show up without a lawyer. See Part II of Stovall v. Denno, supra; also Rivers v. United States, 5 Cir., 400 F.2d 935.

Nor, if I be right, can the harmless error rule excuse this breach of Dawson's constitutional right to counsel. Here the standard would be the stricter Federal one: that beyond a reasonable doubt the error was harmless. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284.

II

Moreover, it would seem that the majority of this specially constituted court would put in effect the Double Objection Rule. That is, after a defendant's pretrial motion to suppress is overruled, then on the main trial it would still be necessary to object to the offer of the evidence already ruled

upon. This, of course, is an adoption of the dictum of the late Judge Johnson in Carpenter v. State, 42 Ala.App. 618, 174 So.2d 336(12). Anno. 50 A.L.R.2d 531 at 591, § 12(b).

I give this caveat as a reminder that a lawyer must return to the old rule to protect a record: "Object, always object, till Hell freezes over."

In this case I vote, not for a reversal, but for a remandment in accordance with Part V of the opinion in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149.