Appellant was indicted for murder in the first degree. He was convicted of murder in the second degree and the jury fixed his punishment at twenty years in the penitentiary. At arraignment and throughout the *Page 753 
trial proceedings, he was represented by retained counsel. He interposed a plea of not guilty. After being sentenced he gave notice of appeal and requested that the sentence be suspended pending appeal. Sentence was suspended and bond was fixed at $10,000.00.
Appellant was charged with killing his father-in-law, James Clarence Jackson, by shooting him six times with a small caliber pistol in front of the Bungalow Cafe in Opp, Alabama, on the night of November 9, 1974. Appellant admitted the shooting but claimed he did so in self defense.
Prior to trial appellant filed a "scatter-gun" motion to produce which reads as follows:
"MOTION TO PRODUCE
 Now comes the Defendant and moves the Court to require the District Attorney, Sheriff of Covington County, Clerk of the Circuit Court, State Toxicologist, police and law enforcement officials having possession of the following items to immediately produce the same for inspection and examination by Defendant and his attorney on the grounds that the same is necessary in order for this Defendant to properly prepare his defenses against the Indictment pending against him in this case.
 1. All Statements in writing made or signed by the Defendant.
 2. All statements in writing of police and law enforcement officials who have performed services in this case against this Defendant, which statements are in the possession of the District Attorney.
 3. All confessions, admissions, and statements made by the Defendant or any other person who is a witness or who may become a witness in this case to any police officer or law officer or State investigator
 regarding the charges which have been preferred against this Defendant resulting in the Indictment, whether said statements have been reduced to writing or not.
 4. View of all contraband taken in the possession of the Sheriff or District Attorney in this case which is or is expected to become items of evidence to be offered by the State of Alabama in the prosecution of this case.
 5. View of all items of evidence which will be or is expected to be offered by the State of Alabama as exhibits in the trial of this case.
 6. The names and addresses of all law enforcement officials who seized the foregoing items or any part thereof.
 7. The names and addresses of all potential witnesses which the State of Alabama expects to use in the trial of this case.
 8. The names and addresses of all witnesses that testified before the Grand Jury regarding the charge made against this Defendant resulting in the Indictment pending against the Defendant."
This motion was set for hearing on April 1, 1975. At this hearing the District Attorney made the following responses to the motion to produce:
 "BY MR. McGILL: In reference to paragraph one, a motion to produce, the District Attorney has not seen a confession made by or signed by the defendant. And I know of no one else who does have one. In reference to paragraph two, unless the court so says, I don't intend to produce. In reference to paragraph number three, with respect to the defendant, I know of no confession or admission, in this case, signed or made by the defendant. In reference to paragraph four, the pistol involved, it is at the criminal laboratory in Enterprise, the photographs are located at the Opp Police Department. The lab report, postmortem examination, can be viewed in my office at any time. And, of course, *Page 754 
everything I just said applies to paragraph five also. In reference to paragraph six, my records indicate that five officers were at the scene, and made reports. At this time, they do not indicate which officer handled which particular piece of evidence or contraband.
 "BY THE COURT: You can furnish the name of those five officers and where he can interview them, can't you?
 "BY MR. McGILL: Yes, sir. And, in reference to paragraph five there is an undershirt, six bullets, and the blood specimen, were sent to the lab. And the undershirt and bullets are presently in the possession of the Sheriff, of Covington County. In reply to paragraph seven, the witnesses are as follows: Don Harrell, Deputy Sheriff. Jerry Brannon, an Opp Policeman. John Roughton, Opp Police Department. Officer Turner, Opp P.D. Hulon H-U-L-O-N Phillips, I have no address for him. Ranell Jackson, no address. Charles L-E-G-E-R, no address. James Paul, no address. Margaret Cooper, no address, but I assume that is in Opp also. Jackie Slawson, route two, Elba. Mary Phillips, Kinston. Forest Hobson, Andalusia. Lamar Miller, Richard Carter, and James M. Buttram, B-U-T-T-R-A-M. Carter is from Enterprise.
"BY THE COURT: Miller is too, isn't he?
 "BY MR. McGILL: So is Miller; Buttram, he is from Auburn.
 "BY MR. JONES: Did you say Lamar Miller was from Enterprise?
 "BY MR. McGILL: The criminal lab. In regard to paragraph eight, Don Harrell, Shirley Turman are called as witnesses.
 "BY MR. JONES: Was Richard Carter with the criminal lab, also?
 "BY THE COURT: Yeah, I think they call him Richard Carter.
 "BY MR. JONES: So is Miller and Buttram, are they with the criminal lab?
"BY MR. McGILL: That's right.
 "BY MR. JONES: And James Paul — you have an address on him — what is his address?
 "BY MR. McGILL: I think he lives in Coffee County, but you can find out in Opp.
"BY MR. JONES: What about Hulon Phillips?
"BY MR. McGILL: I don't know about him.
 "BY MR. JONES: Ranell Jackson, is she a witness or not?
"BY MR. McGILL: I think so.
 "BY THE COURT REPORTER: Then, y'all had an off the record discussion and then,
 "BY THE COURT: All right. Does that dispose of all of it?
 "BY MR. JONES: Judge, are you going to require him to produce?
"BY THE COURT: No I'm not.
 "BY MR. JONES: All right. We except. I understand that you don't have reason to believe that they have been reduced to writing or not. He has not admitted —
"BY MR. McGILL: Do you have any —
 "BY MR. JONES: Yeah — made any admissions on the part of the defendant.
 "BY MR. McGILL: As far as we know, he admitted to several officers, on several different occasions, that he fired the shot that killed him.
 "BY MR. JONES: Is that all the subject of admission — *Page 755 
"BY MR. McGILL: I don't know, to tell you the truth.
 "BY MR. JONES: Judge, I think we are entitled to full disclosure. Even as to an oral statement, of the defendant. We will get into it at the trial, I guess.
 "BY THE COURT: Any officer present at the scene will tell you what they know, if they don't tell you what they know, tell me and I will make sure that they do.
 "BY MR. JONES: And in any case, we can go to the criminal lab?
"BY THE COURT: Yes, sir, you can go.
 "BY MR. JONES: In Enterprise — and see the exhibit the D.A. referred to. And, of course, we should have no trouble.
"BY THE COURT: All right."
The State called the Sheriff of Covington County to testify about an oral confession appellant made to him some time after the shooting. There was a voir dire hearing out of the presence of the jury and appellant moved to suppress the Sheriff's testimony based on ground 3 of his motion to produce hereinabove set forth.
From the record:
 "THE COURT: Apparently I had only ordered that he talk to the officers that were at the scene. So, I am going to suppress the statement.
"BY MR. McGILL: All right, sir."
Mr. John Roughton, a policeman with the City of Opp, Alabama, testified that he was on duty on November 9, 1974, when he received a call to go to the Bungalow Cafe. He got the call at 10:15 p.m. and arrived at the cafe at 10:16 p.m. and saw a woman, Mary Phillips, and appellant standing near an automobile in front of the cafe. He saw a body lying on the ground next to the front tire of one of the parked cars. At that time Mary Phillips identified appellant as the man who had done the shooting. Appellant voluntarily said, "That _____ _____ _____ _____ won't pull a gun on me any more." Roughton then arrested appellant and put him in Officer Turner's patrol car who had just arrived on the scene. Just before appellant was put in the patrol car, Officer Roughton asked him if he had a car and appellant pointed to a black Buick automobile. The officer looked in the back seat of the Buick and saw a .22 rifle in plain view. He reached in the car and got the rifle and unloaded it, taking a live cartridge out of the rifle. He gave Officer Turner both the rifle and cartridge. He then called for an ambulance, the Coroner and the Sheriff's Department. Reputy Sheriff Don Harrell was the next officer to come to the scene of the shooting.
On cross-examination Roughton testified that he found a closed knife approximately three feet from the body of Jackson and he gave the knife to Deputy Harrell.
Deputy Sheriff Don Harrell testified that he and State Trooper John Harrell went to the Bungalow Cafe around 10:25 p.m. on November 9, 1974, to conduct an investigation into the shooting that took place there that night. When they arrived, there were a number of other officers present as well as a number of other people. He stated that he had photographs made of the scene and the body of the deceased in his presence. These photographs were identified and admitted in evidence without objections. He said they made a search for the murder weapon and it was found on the roof of the cafe. That he took charge of the pistol and kept it in his exclusive possession until he personally delivered it to Mr. Dale Carter at the laboratory of the Department of Toxicology at Enterprise, Alabama. He wrote down the serial number on the weapon before delivering it to Mr. Carter.
This witness further testified that when he arrived at the cafe, he saw the body of *Page 756 
Mr. Jackson lying on the ground and there was a lot of blood under his head and body. That he felt his pulse and there was no pulse. He was present when the Coroner arrived and pronounced Mr. Jackson dead.
The deputy further stated he went to Opp and got appellant out of the City jail and took him to a private interrogation room. At this point a voir dire hearing was held out of the presence of the jury.
On voir dire this witness testified that present at this interview were Chief of Police Shirley Turman, Officer Turner and Trooper John Harrell. In the presence of these officers Deputy Harrell gave appellant the Miranda rights and warning by reading a card to him. After reading his rights to appellant he asked him if he understood them and he said he did. The officer asked him if he wanted to talk to them and appellant replied, "I'm not signing anything until I see my lawyer. But, I will talk to you, I have nothing to hide, I will talk to you."
The officer further stated that before appellant made a statement that neither he nor anyone in his presence or hearing threatened or abused appellant in any way or offered him any immunity, promises, rewards, or the hope thereof, to get him to make a statement. He stated that appellant told him that he had been drinking and stopped by Pete's Drive-in and had a few beers. Appellant further stated that Charles Leger, a friend, was with him. That they left Pete's Drive-in and went to the Bungalow Cafe where Mr. Leger shot pool while he sat at the bar and had a few drinks. That he got up and walked back to the partition looking into the dance floor and was standing there when his father-in-law came up that way and appellant asked him to step outside and talk a little bit. Appellant said that as he went out the door, Mr. Jackson turned, cursing him, and he thought he was going for a gun and he shot him. Appellant told the officers that he threw the gun on top of the building. He further made the statement that he and his father-in-law had had trouble in the past, "and he was not sorry that he did it, but that if he had it to go over again, he would do it again."
On cross-examination the Deputy was asked if appellant didn't say he shot in self-defense and the witness replied, "He didn't say self-defense, he said he shot the man because he thought the man was fixing to shoot him."
It developed during this voir dire hearing that the Chief of Police of Opp set up a tape recorder during the interview with appellant but not before appellant had made the statements above mentioned. The Chief of Police had died in the meantime and the tape was discovered in the trunk of his car the day before appellant's trial. The Court ordered the tape produced and it was played in the presence of the Court, the District Attorney, appellant, appellant's attorney, Deputy Harrell and the Court Reporter. Defense counsel then asked that he be furnished with a copy of the tape reduced to writing and the Court ordered the District Attorney to make the tape available for use by defense counsel. The Court then overruled defense counsel's motion that Deputy Sheriff Harrell not be permitted to testify before the jury until the tape was transcribed.
Deputy Harrell was called back to the stand for further voir dire and testified that his testimony was based on what appellant had told him and not from what was recorded on the tape. The defense had the benefit of the tape recording for the cross-examination of Deputy Harrell. The Court adjourned the trial overnight so that defense counsel could complete the transcription of the tape. The tape was subsequently offered into evidence by stipulation and was played for the jury.
After appellant's counsel had been given the opportunity to talk with other officers the trial was resumed in the presence of the jury. Deputy Harrell testified before *Page 757 
the jury and his testimony was the same as he gave on voir dire out of the presence of the jury. He admitted that on the tape appellant said he was sorry he shot the deceased but he had to do it. This witness further stated that notwithstanding what appellant said on the tape that when he was carrying him to the Andalusia jail, appellant repeated that he was not sorry and if he had to do it over, he would do it again.
Dr. James M. Buttram who was employed as a Toxicologist with the Department of Toxicology and Criminal Investigation performed an autopsy on the body of Mr. Jackson. He testified as to his education, experience and qualifications. He described in great detail the autopsy that was performed and that he recovered six bullets from the body of the deceased. One bullet entered the head of the deceased and the other five entered the front chest area. It was this witness's opinion that death was due to the bullet which entered the head of the deceased. These bullets were delivered to Mr. Dale Carter, a Criminalist, at the Enterprise Regional Laboratory of the Department of Toxicology.
After being duly qualified this witness testified that he received the six bullets removed from the body of Mr. Jackson along with the weapon used by appellant at the time of the shooting. Mr. Carter testified that upon examination and comparison of the six bullets, it was his opinion that they were fired through the barrel of the weapon that was personally delivered to him by Deputy Sheriff Don Harrell. Mr. Carter further testified that he received a sample of blood taken from the deceased and he checked the sample for the presence of ethyl alcohol and the test proved that there was no alcohol in the body of the deceased.
After the State rested, appellant moved to exclude the State's evidence on the ground the evidence failed to make out a prima facie case. The motion was overruled and denied.
Appellant testified in his behalf and he detailed a long history of trouble with the deceased in which the deceased threatened to kill him on several occasions. He stated that on the night of the shooting the deceased asked him to step outside the cafe and called him a ___ ___ ___ ___. When they got outside, he saw the deceased make a step as if to head him off and he appeared to be drawing a gun on him and he shot him. He said he did not know how many times he shot his father-in-law.
Appellant offered the testimony of three character witnesses who testified to his good general character in the community and that he had a good reputation for truthfulness and veracity. They further testified that they would believe him on oath in a court of law.
On rebuttal the State called Elie Harrell, Sheriff of Covington County, who testified that appellant told him he never saw a knife in Jackson's hand. That Jackson came from the rear of the building and was headed in the direction of the restroom. Appellant told the Sheriff that he and his father-in-law had had trouble before and that he wanted to settle it once and for all.
Appellant filed a motion for a new trial alleging misconduct during the trial by the bailiff and a woman juror. This motion was set for hearing and considerable testimony was taken covering more transcript pages than the trial in chief.
Appellant's mother, father, three brothers and a lifelong friend of appellant testified that while the judge, lawyers and appellant were out of the courtroom they saw the bailiff pick up an exhibit (photograph) and walk over to the jury box and discuss the exhibit with one of the female jurors.
The bailiff and each and every member of the jury took the stand emphatically denying *Page 758 
that such a thing took place. The motion for a new trial was overruled and denied.
On cross-examination appellant was asked whether he had ever been charged with the commission of a felony. These questions were asked and answered before objections were made by defense counsel. Appellant also stated that he had been convicted of reckless driving before an objection was made. The objections in the instant case came too late.
In Barnett v. State, 52 Ala. App. 260, 291 So.2d 353," this Court held:
"As may be seen, defense counsel did not object until
 after the question pertaining to `No. 33' was answered, and also the following question answered. It is clear, therefore, that the objection in this case was not timely, Carpenter v. State, 42 Ala. App. 618, 174 So.2d 336, and therefore such is waived. Lucky v. State, 50 Ala. App. 324, 278 So.2d 772, and authorities therein cited."
Appellant claims that reversible error was committed when the character witnesses were asked if they had heard that appellant had been indicted for assault with intent to murder. There were no objections to the questions posed to these witnesses.
Matters not objected to in the trial court cannot be considered for the first time on appeal, since a review on appeal applies only to rulings by the trial court. Wade v.State, 49 Ala. App. 601, 274 So.2d 626; Thompson v. State,44 Ala. App. 414, 211 So.2d 505.
Each of these witnesses testified they had not heard about any such indictment. A negative answer to an improper question does not constitute reversible error. Stephens v. State,250 Ala. 123, 33 So.2d 245; Leonard v. State, 36 Ala. App. 397,58 So.2d 138; Hurst v. State, 54 Ala. App. 254, 307 So.2d 62.
There was no written and signed confession in this case to be produced on demand of appellant. There was a tape recording of a conversation with appellant and as above stated, it was played to the jury. Tape recordings of conversations with persons accused of crimes and played to the jury have many times been approved by appellate courts. Boulden v. State,278 Ala. 437, 179 So.2d 20; Flannagin v. State, 289 Ala. 177,266 So.2d 643; Brown v. State, 53 Ala. App. 674, 304 So.2d 17; Lykesv. State, 54 Ala. App. 7, 304 So.2d 249.
During the District Attorney's closing argument he stated that one of the character witnesses had testified that he knew appellant's reputation for violence. The trial judge sustained the objection and instructed the jury to disregard the remark. It is settled law that improper argument may be cured where the objection is sustained and the argument is excluded. Burkett v.State, 215 Ala. 453, 111 So. 34; Luschen v. State, 51 Ala. App. 255, 284 So.2d 282.
The trial judge failed to charge the jury on the law dealing with good character evidence and appellant contends this was error to reverse. At the conclusion of the Court's oral charge appellant's counsel announced "Satisfied, Your Honor."
Counsel must submit written instructions covering the omitted legal principle to properly preserve the alleged error for appellate review. Davis v. State, 246 Ala. 101, 19 So.2d 358;Waller v. State, 35 Ala. App. 511, 49 So.2d 232; Gray v. State,52 Ala. App. 481, 294 So.2d 448.
Decision on motion for a new trial rests largely within the sound discretion of the trial court and, in reviewing that decision this Court will indulge every presumption *Page 759 
in favor of the correctness thereof. Moore v. State,52 Ala. App. 179, 290 So.2d 246; Johnson v. State, 51 Ala. App. 172,283 So.2d 624.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.