Robbery; ten years.
The appellant is before this court with appointed counsel and a free transcript.
The evidence offered on behalf of the State was as follows:
Cynthia Hart, on December 30, 1975, was employed at the Sears Store at 1920 South Court Street in Montgomery, Alabama. About 6:30 P.M. that day she left work and was walking toward her car in the employees' parking lot, which was about sixty-five feet from the store. It was not really raining but was misting and the light in the parking lot was not good. Hart testified that as she was walking to her car, she noticed two black males approaching her. As they continued to walk toward her, she stopped momentarily, and then began to walk again. She was about five cars from her car at the time and as they came up to her, one of them went behind her and the other pulled a gun and said: "Give me your purse." Hart stated that he asked her how much money was in her purse and she told him there was ten dollars. He then asked what was in the sack she had and when she told him it was a dress, he said; "Okay, get in your car and get out of here." She recalled that the first thing the one man with the gun said to her was: "This is a real gun." Hart described the gun as a small, shiny pistol. She said that only one of the men talked and that he was the one with the gun.
Hart testified that she was put in fear at the time and that the entire confrontation lasted about five minutes. She stated that when the men left they walked across the parking lot toward Court Street. Hart said that at that point, she went to her car and drove to the Sears' shipping dock where she reported what had occurred.
During the trial, Hart described the man who had robbed her as being about medium height and wearing blue jeans. She said one of the robbers had on a hooded sweatshirt and the other was wearing a wind-breaker. She identified the appellant as one of the men involved in the robbery and said that although she was not "one hundred percent sure," she was "very sure" he was involved.
Hart stated that the purse that was taken was valued at ten dollars and that it contained two dollars. She explained that she had told one of the males that the purse contained ten dollars but realized later that the money was in her jacket pocket. *Page 1103 
The witness recalled that in January she had attended a lineup supervised by Detective Fisher. At that point in the trial, the defense made a motion for a voir dire examination outside the presence of the jury. During this hearing, Hart testified that about three weeks after the robbery, she viewed the lineup with William G. Summers. She said there were five or six men in the lineup and they were all black and wore either blue denim or gray clothing. Hart identified the appellant during the hearing and stated she did not know when Summers made his identification. According to Hart, at the time she viewed the lineup, no one made any indication to her as to who they thought the alleged robber was. She said that Detective Fisher told her prior to viewing the lineup: "If he was in there, the man that I thought did it, to pick him out and let him know."
At the completion of Hart's testimony, during the voir dire hearing, defense counsel moved to exclude all of her testimony concerning the lineup on the grounds that Hart testified that she thought it was the defendant and did not make a positive identification. The court overruled the motion and Hart continued her testimony when the jury returned. She then identified the defendant as the one who stole her purse and recalled that he had a "slight limp."
On cross-examination, Hart said that, at the time of the incident, it was dark and that the parking lot was not well lighted. According to Hart, when she first noticed the two males, they were about ten feet away. She said: ". . . I knew something was going to happen so I then started to turn and go back in the store and then he said `This is a real gun and I'll use it.'"
On re-direct examination, Hart said she noted the appellant's manner of walking on her own, but had forgotten about it until she saw him walk at the lineup.
William G. Summers, Jr., was employed by the Montgomery Police Department and on December 30, 1975, was also working as a security guard at the Sears Roebuck Store on Court Street in Montgomery. On the above date, he was in the stock room on the second floor of the store and was watching the "employee parking lot" through binoculars. It was misting at the time and he saw two subjects come out of a wooded area near the corner of the parking lot and walk into or around the store. When they returned, he saw them come out of the woods again and position themselves behind a "Goodwill box." According to Summers, they were behind the box about two or three minutes and about that time Cynthia Hart was walking to her car. He stated the two came from behind the "Goodwill box" towards Hart. Summers said:
 ". . . the one that had a grey sweat shirt on, he motioned for her to stop with his left hand and with one motion, with his right hand, he came from his beltline to her bustline with a pistol or what I thought was a pistol. And the other subject stationed himself around behind her and he reached out and got her purse, motioned for her to go on and at that time I left my observation point."
Summers said he went downstairs and tried to apprehend the two.
During cross-examination, Summers stated that it was approximately 9:30 on the night of the incident when he ". . . made the identification from the photo book." According to Summers, he based his identification on the defendant's facial features. Approximately three weeks after the robbery Summers attended a lineup. He said Hart did not make an identification in his presence. Summers stated that although he did not make his identification of the defendant known until after the viewing, he had made an identification to himself at the time the lineup was taking place. He said no police officer supervising the lineup made any suggestion to him as to whom he should identify. Summers testified that Detective Fisher had told him to just look at the lineup and keep his "answer to himself." He acknowledged there was not any doubt in his mind that the defendant was the man he saw in the parking lot, but said he did not notice anything distinctive about the way the man was walking. *Page 1104 
Art E. Fisher was a detective with the Montgomery Police Department, and was the officer who organized the lineup conducted on January 20, 1976. He testified that Officer W.G. Summers and Cynthia Hart observed the lineup. Fisher said there were five black males in the lineup, one of which was the defendant. He described each of the men in the lineup as to age, height and weight. Fisher said that during the lineup the five members were asked to state: "Get in your car and get out of here." He said that when the lineup was terminated, he escorted Hart to his office. While Fisher and Summers were standing in the hall outside Fisher's office, Officer Summers positively identified the subject as number five in the lineup. Number five was ascribed to the appellant. Further, Fisher said:
 "Cynthia Hart stated that number five resembled the subject inasfar [sic] as the speech, the walk, the height, the body build but she would not give a positive facial identification but tentative identification."
At the end of Detective Fisher's testimony, the State rested and the defense counsel made a motion for an affirmative charge, a directed verdict, and a motion to exclude the State's evidence. He assigned as grounds that the identification was "very shaky" and there was an extreme conflict in the testimony on vital points of the case. Further, he maintained the State had failed to prove that the defendant was involved in the alleged robbery. The court denied the motion and the defendant called Cynthia Hart as its only witness.
Hart stated that the appellant's limp that she had noticed, ". . . wasn't an actual limp like a handicap or anything, it was just the particular way he walked, a swagger or something."
At the end of Hart's testimony, the defense rested without putting on any further evidence.
 I
Counsel for appellant maintains that the in-court identification of the appellant was inadmissible because appellant did not have counsel and did not waive counsel at the pre-trial lineup.
A person's right to counsel at a pre-trial lineup attaches:
 ". . . only at or after the time that adversary judicial proceedings have been initiated against him. [Citations omitted.]
 ". . . whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411.
Accord: United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568,37 L.Ed.2d 619; Ratcliff v. State, 49 Ala. App. 77, 268 So.2d 858;Houston v. State, 49 Ala. App. 403, 272 So.2d 610; Giles v.State, 52 Ala. App. 106, 289 So.2d 673.
In the present case the record indicates that the only objections made concerning the lineup were that the victim's testimony should have been excluded because she did not make a "positive identification."
We are unaware of any decision that maintains that one viewing a lineup must make a positive identification before his testimony is admissible in court. The question of whether the victim's identification was positive or not goes to the weight and credibility of her testimony, and was a question for the jury. Carpenter v. State, 42 Ala. App. 618, 174 So.2d 336.
In addition, the victim, and the police officer who was viewing the alleged robbery through binoculars, had ample facts upon which to base an identification of origin independent of the lineup.
Under these circumstances, the lower court's denial of the motion was correct.
 II
It is maintained that the indictment should have alleged the specific date of the offense and the failure to do so prevented preparation of appellant's defense. Counsel argues that appellant's motion for a mistrial *Page 1105 
should have been granted when it was shown that the offense occurred in December of 1975, and not in June of 1975.
The record shows the indictment followed form 95, T. 15, § 259, Code of Alabama 1940, Recompiled 1958. Further under T. 15, § 237, Code of Alabama 1940, Recompiled 1958, no requirement exists for an averment of the precise time when an offense was committed.
In Harris v. State, 44 Ala. App. 449, 212 So.2d 695, this court stated: "Time is not a material ingredient in a charge of robbery."
The trial court's ruling on the motion for a mistrial was correct.
 III
Under the facts recited above, there was enough evidence to allow the jury to draw the inference that the appellant was the person who committed the robbery. The only defense witness called was the victim of the robbery. Although the victim did not make a positive identification, there was testimony from another witness who did positively identify the appellant. Whether the evidence offered established the identity of the appellant as one of the robbers presented a question for the jury. Carpenter v. State, supra.
In our judgment, the evidence was sufficient to sustain the jury's verdict. Willcutt v. State, 284 Ala. 547, 226 So.2d 328;Raybon v. State, 55 Ala. App. 143, 313 So.2d 570.
We have examined the record in this case and have found no error.
AFFIRMED.
All the Judges concur.