255 So.2d 604

**Jessie B. REDMON, alias**

v.

**STATE.**

**6 Div. 102.**

Court of Criminal Appeals of Alabama.

Nov. 2, 1971.

Rehearing Denied Dec. 14, 1971.

---

422

Cates, J., dissented.

Milton G. Garrett, Birmingham, for appellant.

MacDonald Gallion, Atty. Gen., and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State.

**PRICE, Presiding Judge.**

Appellant stands convicted of burglary in the first degree, with punishment fixed at life imprisonment.

For the state, Mr. E. A. Vinson testified that in the early morning hours of Saturday, August 24, 1968, he was awakened by the barking of his dog. He went outside and attempted to quiet the dog. Upon reentering his house he saw a man in bed with his daughter. The daughter, twenty-one years old, suffers from residual effects of encephalitis, is retarded, sleeps a great deal and did not awaken while the man was in the room. Mr. Vinson lunged at the man and struck him as he jumped out the window. He pursued him for a short distance but could not overtake him. The screen to the daughter's window had been removed and a large hunting knife was lying on the ground below the window.

At the trial Mr. Vinson identified the defendant as the man he saw with his daughter.

A diagram was drawn on a blackboard, showing the location of the rooms, and Mr. Vinson was questioned about the lights in-side the house. He stated that while the light was not on in his daughter's room, the room was well lighted from ceiling lights in adjoining bedrooms and in the bathroom.

The police were called and Mr. Vinson gave them a description of the man. Mr. Vinson testified without objection that he picked defendant out of a lineup at the city jail.

At this point the court held a voir dire proceeding outside the presence of the jury to determine whether the in-court identification was tainted by the lineup. At the voir dire hearing Mr. Vinson stated he thought there were ten or twelve persons in the lineup. The men were all approximately the same size, some were wearing white shirts, some were dirty and some were clean. He testified further that when he walked into his daughter's bedroom he startled the intruder, who raised his head, and witness looked into his face from three to five seconds. The light was shining on the bed, "almost as light as it is now."

In response to questioning by the court the witness answered that the burglary occurred just before daylight. On Sunday around noon he was taken to the city jail. He was in the room where the police records were kept and an officer told him to turn his back when the lineup members filed into the room. Defendant was number two in the lineup and witness recognized him the moment he saw him. He identified defendant by his face and not by his clothing.

Officer Pierce of the Birmingham Police Department testified he conducted a lineup on Sunday, August 25th, about 2:00 P. M. The lineup consisted of defendant and five others of substantially the same height, weight and coloring. There was nothing in their dress nor the manner in which they were placed on the stage to cause defendant to stand out from the others. Defendant was number two. The men were all about the same age, weight and height.

Mr. Vinson was not in the room when the men were brought in. They were placed on the stage and the lights were turned on before Mr. Vinson was brought into the room. He was given no instructions as to the manner in which he was to view the lineup or that this was the man that was in his house. Mr. Vinson identified Redmon almost immediately. He was the number two man, was twenty five years old, five feet nine inches and weighed 145 pounds.

Mr. Pierce stated defendant did not have the benefit of counsel, was not told he had the right to an attorney and he did not waive his right to counsel.

Defendant testified he was one of six persons in the lineup. He had listened to the officer's reading of the list showing the height and weight of each man and this was a correct general description of each person. Before going into the lineup he was not asked if he wanted to see a lawyer. He was not given an opportunity to call a lawyer and there was no conversation concerning his right not to be in the lineup. He had heard his brother call his attorney before he was taken to jail, but he did not tell Officer Pierce that Mr. Jones was his lawyer and he wanted him there.

The court then ruled that the in-court identification was admissible.

Defense counsel moved to exclude the testimony of Mr. Vinson with respect to his having identified defendant in the lineup. The motion was denied. The jury was recalled and defense counsel cross examined state's witness Vinson concerning his identification of defendant at the lineup.

■ Appellant contends that Mr. Vinson's in-court identification should have been excluded because of absence of counsel at the prior lineup identification, relying on United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S. Ct. 1951, 18 L.Ed.2d 1178.

The question whether the out-of-court identification was so necessarily suggestive as to be a violation of due process depends upon all the surrounding circumstances. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, Clemons v. United States, 408 F.2d 1230.

The factors involved in the lineup are: the description given the police was substantially the same as defendant's actual description; the time lapse between the alleged act and the identification was only a few hours; the lineup consisted of six men of similar age, weight, height and color; Mr. Vinson was given no instruction as to defendant's guilt or his position in the lineup, but he immediately picked him out of the lineup; there was no identification of a picture prior to lineup and no identification of another person.

The circumstances do not show an unfairly constituted lineup, nor was it shown to have been conducted in such an unnecessarily suggestive manner as to be conducive to irreparable mistaken identification. Foster v. California, 394 U.S. 440, 89 S. Ct. 1127, 22 L.Ed.2d 402.

■ Furthermore, even if the lineup is found to be violative of due process, the in-court identification need not be rejected if it is shown to have a source independent of the lineup. Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387; Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247.

■ Mr. Vinson testified he had an opportunity to observe the defendant at the time of the crime and that he recognized him in the lineup because of his facial features. Whether the lighting conditions in the house and the length of time in which he had opportunity to observe the defendant were such as to give him a clear visibility to recognize and remember him were matters to be considered by the jury in determining the weight to be given the in-court identification. Clemons v. United States, supra.

The court properly denied the defendant's motion to exclude the in-court identification of defendant.

■ The defendant injected into the case the fact that three inhabited dwellings, short distances apart, were burglarized the same night.

Hosea Bickerstaff, Jr., defendant's witness, testified he lived at 826, 44th Street North, in the same apartment unit with defendant's mother, who lived at 828, 44th Street, North, and that defendant burglarized his apartment at 4:15 A. M., on August 24, 1968. Witness chased defendant, who left a pair of bedroom slippers on the steps. Witness went back in the house, dressed, got his pistol and went out in the street and saw defendant coming down the street, barefoot, wearing a white shirt and blue jeans. Defendant turned and ran and witness chased him for two or three blocks, but lost him. He went back home and found the police were there and left immediately. Ten or fifteen minutes later he saw defendant looking into his back window, which was a few feet from defendant's mother's window, and defendant ran into his mother's apartment. About fifteen minutes later the police returned in response to a second call. One of the officers left, presumably to obtain a warrant, and upon his return defendant was arrested.

Defendant testified he was twenty-one years old; that he was convicted of automobile theft in 1962; grand larceny in 1966; and was released from the penitentiary on August 14th, ten days before the occurrence of the offense alleged in the indictment. He admitted going into the Bickerstaff house, but testified he had attended a party and was drinking. The Bickerstaff apartment was exactly the same as his mother's apartment. He became confused and went into the wrong apartment. He entered the apartment through the window to keep his mother from knowing he was drunk.

Defendant brought out the fact that another house, Morrison's, was burglarized the same night. The police arrived at this house at 4:45 A. M. A baby sitter told Officer Clark she hid in a closet while the intruder ransacked the house and that she stayed in the closet fifteen minutes after he left before telephoning police. It was also shown that the knife found under the window at Vinson's came from the Morrison home.

In an effort to prove that it was physically impossible for defendant to have entered Vinson's home at the time in question, testimony was introduced to show the relative locations of the three burglarized houses and the time element involved. Vinson lived at 720 N. 47th Street; Morrison at 804 N. 47th Street and Bickerstaff at 826 N. 44th Street.

The police received the first call to go to Bickerstaff's at 4:20. The second call to Bickerstaff's was at 4:50. Defendant was arrested there and booked for the Bickerstaff burglary at 5:56 A. M.

The call from Morrison's was received at 4:54 and the police remained there for forty six minutes and were leaving Morrison's when the call came from Vinson at 5:42. The Morrison and Vinson houses were only a block apart. Mr. Vinson told police his home was broken into an hour before he called police, which would time the breaking there at 4:42. During this hour he was attempting to comfort and console his frightened wife and daughter who had awakened from her sleep.

Appellant assumes the position that he is accused of committing these three burglaries within a thirty minute period, during which time he would have had to walk or run several blocks and that such a feat was a physical impossibility.

While there was testimony that defendant was seen in the Bickerstaff and Vinson homes, there was no direct testimony placing him in the Morrison home. The only evidence tending to connect the Vinson burglary with the Morrison burglary was

that the knife found under Vinson's window came from Morrison's home.

Moreover, the time each burglary was committed depended on an estimate or judgment on the part of the person or persons in the house, and other matters, such as a call to the police which was then dispatched to a patrol car and the time of the receipt of the call listed on the record by the officers in the car. The lapse of time between these events is entirely a matter of estimate or judgment. The time of the receipt of the calls was listed by the police, but the intervals between the receipt of calls at headquarters and their receipt by the officers in the car are not recorded. All of these questions were properly left to the determination of the jury.

We have carefully searched the record and find no reversible error. The judgment is affirmed.

Affirmed.

CATES, J., dissents.