[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1072 
Assault with a deadly instrument on a peace officer engaged in active discharge of his lawful duties; sentence: twenty years imprisonment.
This is the second time this case has appeared before this court. On the original appeal to this court, the indictment was held to be insufficient because it failed to identify the person assaulted. Andrews v. State, Ala.Cr.App., 344 So.2d 533, cert. denied, Ala., 344 So.2d 538 (1977). Appellant was reindicted in June 1977 on the charge of assaulting Police Officers Hyrum W. Turner and Lawrence Nelson with a deadly instrument. The alleged assault took place at Pete's Drive-In in Opp, Alabama, during the early morning hours of February 7, 1976. Appellant, while involved in an altercation with Donnis McDonald, discharged a shotgun into the ceiling of the building. When Officers Turner and Nelson arrived, they ordered the appellant to come outside unarmed. Appellant escaped via the front door firing his weapon in the direction of the police officers in the process and then sped away in his automobile. A chase ensued during which appellant wrecked his automobile and was apprehended by the police.
 I
The appellant contends that he was denied his right to a speedy trial guaranteed by the Sixth Amendment to the United States Constitution. Appellant bases this contention on the fact that (1) he was not arraigned until approximately nine months after his indictment, and (2) as a result of this delay, he was prejudiced because a key defense witness, Donnis McDonald, was outside the state's jurisdiction and was unavailable for trial. Appellant claims that McDonald's testimony would have proven Officer Turner's testimony unreliable. Turner testified that appellant fired at him with the shotgun as appellant ran out the front door of Pete's Drive-In. Appellant claims that McDonald's testimony at the first trial was that no shotgun blast was heard as appellant fled out the door of Pete's Drive-In.
Under the holding of Barker v. Wingo, 407 U.S. 514,92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the conduct of both the prosecution and the defendant must be weighed. There must be a balancing test. The United States Supreme Court in Barker, supra, set out four factors that should be considered in determining whether one has been deprived of a speedy trial: "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." There is no fixed length of time that is considered to be per se unreasonable.
First, we do not think that the lapse of approximately nine months between indictment and arraignment was unreasonable since appellant was out of the state's jurisdiction at the time of the indictment. Appellant was incarcerated in the Pinellas County Jail in Largo, Florida. Extradition proceedings were begun in December 1977, appellant was arraigned in March 1978, and trial was held on April 28, 1978. It was not until the day of trial that appellant asserted that he was prejudiced by not being able to call McDonald as a witness. There is no indication in the record that appellant ever attempted to contact McDonald before trial or whether an attempt was made to subpoena him.
Second, McDonald's testimony in the first trial was directly contra to appellant's contention on this appeal. McDonald stated twice in his testimony that he thought he heard a shotgun blast after the appellant ran outside the building, but that he was not absolutely certain. We cannot speculate that McDonald would have changed his testimony for the second trial, and the record discloses no reason why he may have done so. It should also be noted that this court held on appellant's first appeal that the State's proof was sufficient to establish *Page 1073 
that appellant fired a shotgun in the general direction of the police officers. It therefore appears that it would have been to the advantage of the appellant not to have McDonald testify at the second trial. Thus, we find no prejudice to the appellant resulted from the delay.
 II
Appellant's second contention is that the trial court erred in sustaining objections to the testimony of Unie B. Gallops. A quick review of that portion of Mrs. Gallops' testimony is in order:
 "Q. All right. Well, let me ask you this. Do you remember an occasion back around February, of 1976, when you woke up one morning and discovered your mailbox had been knocked down?
"A. Yes, I remember that.
* * * * * *
"Q. All right. Did you look around out there?
"A. Yes, I did.
"Q. Could you tell us what you found?
 "A. The mailbox tore off, and — and the stob bent back, and the mailbox tore all to pieces and it drug up the road.
* * * * * *
 "Q. All right. Did you notice anything out there with reference to skid marks, or tire marks of an automobile?
 "A. Yes, where they drug it across the drive. The mailbox was drug across the drive as it went on up the road.
 "Q. All right. Now, Mrs. Gallops, from looking out there at your mailbox and driveway, and along side of the road, were you able to come to a judgment as to how many cars had been out there?
"A. Well. . . .
"MR. MCGILL: We object to that.
"THE COURT: Yes, I sustain.
 "MR. STOKES: She has told us what she saw. A lay person certainly would ordinarily be able to make a judgment like that.
 "THE COURT: Well, unless she saw some cars and all, I don't see how it is relevant to this.
 "MR. STOKES: Well, here is the relevancy of it. Officer Burdick testified that he never left Pete's Drive-In, and her testimony will show that two automobiles — our offer is to show that two automobiles turned around right in front of her house, showing that he was not down there where he said he was.
"MR. MCGILL: We object, Your Honor.
"THE COURT: Yes, I am going to sustain."
The following then occurred outside the hearing of the jury:
 "MR. STOKES: Your Honor, this affair that we have been talking about in the courtroom today happened two years ago. And the witnesses' memories have broken down, as has been apparent throughout this case. These police officers have contradicted themselves a number of times. Officer Burdick testified that he had come down there and that very shortly after he got there, Mr. Andrews came out, and he ran up to his car, and he grabbed him, and he chased him up to the road, highway 34, and then Mr. Andrews pulled off from him, and that he then returned to his car and pulled out to the edge of the driveway and Mr. Andrews turned around and came back meeting him. But Officer Turner testified that Mr. Burdick got in his car and chased him up the road, and radioed back to him. Now, if Mr. Turner drove up the highway behind Mr. Andrews, then we fail to see how he could have run all the way from Andrew's car back to his car, and gotten into his car and went up the highway and caught him up at Mrs. Gallops' house, just up the hill. It goes to the credibility of the officers as to whether they have a good enough recollection of this thing to remember what they did, and what they saw.
 "MR. MCGILL: May it please the court, in reply to that, the recollection of the witnesses and their credibility is up to the jury, and this is an immaterial point, and I don't think he can even be impeached on it, something that is immaterial, and it *Page 1074 
is immaterial if he caught him or didn't catch him. The main facts in this case is what happened right there through that window when he pointed that shotgun, and when he stepped through that door, and fired at him. What happened thirty minutes later is immaterial as far as the elements in this case.
 "THE COURT: Just to show tracks out there and damage to the mailbox is purely speculative. It might have been two automobiles there, but it could have been any one of a thousand others and I sustain the objection to showing that."
According to Gamble, McElroy's Alabama Evidence, (3d ed., 1977), § 153.01:
 "It is an accepted principle within the first-hand knowledge rule, that a witness can only testify to facts of which he has personal observation. . . ."
(Emphasis supplied.)
Mrs. Gallops did not actually see what knocked her mailbox down. She can only speculate or draw a conclusion as to whether one of more cars, trucks, tractors, etc., knocked the mailbox down. "As a general rule, questions posed to witnesses must be in such form to elicit facts. Witnesses, certainly non-expert witnesses, must testify to facts, not conclusions, inferences or opinions." Allen v. State, 55 Ala. App. 549, 317 So.2d 517
(1975). We agree with the trial court that questions calling for purely speculative answers are improper. Wallace v. State,290 Ala. 201, 275 So.2d 634 (1973).
 III
The appellant contends that his prosecution contravened the constitutional ban against double jeopardy. Appellant was previously convicted in the Municipal Court of Opp, Alabama, for aggravated assault of Donnis McDonald arising out of the altercation at Pete's Drive-In. He argues that the aggravated assault is broad enough in scope to include the assault on the police officers and that to try the two offenses in separate prosecutions constituted double jeopardy. We find no merit to this contention. The two offenses may clearly be distinguished from each other. Assault with a deadly instrument upon a peace officer in performance of his duties must be committed against a peace officer or law enforcement officer while engaged in the lawful discharge of his duties. Title 14, § 374 (20), Code of Ala. 1940, Recomp. 1958, 1973 Supp. [now § 13-1-42, Code of Ala. 1975]. Appellant's conviction of aggravated assault in municipal court was for assaulting Donnis McDonald who was not a law enforcement or peace officer. Even though both assaults occurred within minutes of each other and in the same general area, each required proof of an additional fact which the other did not. Blockburger v. United States, 284 U.S. 299,52 S.Ct. 180, 76 L.Ed. 306 (1932); Colston v. State, Ala., 350 So.2d 337
(1977); Brown v. State, Ala.Cr.App., 367 So.2d 557 (1978).
 IV
The appellant's last contention is that the trial court committed reversible error by admitting into evidence two shell casings which were allegedly discovered at the scene of the incident. Appellant argues that there was no continuous chain of custody established from the time of the alleged incident up to the start of the first trial.
The appellant questions the fact that the two shell casings were not discovered until approximately thirty minutes after the incident occurred. As appellant fled from Pete's Drive-In in his automobile, Officers Burdick and Turner joined in the chase. Appellant was captured after wrecking his automobile. After taking appellant to the police station, Burdick and Turner returned to Pete's Drive-In. They were absent from the crime scene approximately thirty to forty-five minutes. There is nothing unreasonable or unusual for officers to leave crime scenes in pursuant of fleeing felons. Officers cannot be expected to stop during the commission of a crime to gather evidence for a successful prosecution and at the same time apprehend the perpetrator of the crime. We do not see this as a break in the chain of custody to return to the crime scene and gather evidence. *Page 1075 
The appellant also argues that Officer Burdick did not have complete possession of the two shell casings until the first trial was held. Burdick found one of the shell casings inside Pete's Drive-In. Turner found the other shell casing outside the building. Burdick gave the shell casing that he found to Turner. Turner took both shell casings to the police station, placed them in an envelope, and put them in his locker. The next day he turned the shell casings over to Burdick, who in turn placed them in his desk drawer. Burdick testified that the drawers on his desk were not kept locked at all times. He did not testify as to whether the drawer containing the evidence was locked during his possession of the evidence. We think the case of Blakely v. State, Ala.Cr.App., 344 So.2d 812 (1977) answers this contention:
 ". . . To warrant the reception of an object in evidence against an objection that an unbroken chain of custody has not been shown, it is not necessary that it be proved to an absolute certainty, but only to a reasonable probability, that the object is the same as, and not substantially different from, the object as it existed at the commencement of the chain . . ." (Emphasis supplied.)
See also: Waters v. State, Ala.Cr.App., 360 So.2d 358, at 362 (1978), cert. denied, Ala., 360 So.2d 367. We believe the reasonable probability test has been met in this case.
AFFIRMED.
All the Judges concur.