Leonard Williams was indicted for the offense of first degree rape under § 13A-6-61, Code of Alabama 1975. After a jury trial he was convicted of second degree rape, and upon a determination that he was a recidivist under the Alabama Habitual Felony Offender Act, § 13A-5-9, Code, supra, he was sentenced to forty years.
The prosecutrix was a thirteen-year-old daughter of the appellant and lived with her mother. Leonard Williams, the appellant, did not live with the prosecutrix's mother, but with Lillie Mae Jones and her three daughters.
On Saturday, February 9, 1980, the appellant picked up the prosecutrix for the weekend and took her to the house where he lived with Lillie Mae Jones. On Sunday, February 10th about 7:00 P.M., appellant drove Lillie Mae Jones and her daughters to the "washateria" and then he drove the prosecutrix to Matthews' store and then to the cemetery. On reaching the cemetery, the appellant drove down a dirt road to some trees. While there he removed the prosecutrix's clothes and had intercourse with her against her will.
The appellant later returned the prosecutrix to her mother's house, where she told her mother that her father had raped her. Her mother took her to police headquarters to report the incident, and the prosecutrix was subsequently taken to the hospital. About 9:00 P.M., a pelvic examination was conducted which revealed numerous live sperm. It was the doctor's testimony that the presence of live sperm indicated that intercourse had occurred within two hours of the examination.
According to Lillie Mae Jones, it was approximately 7:00 P.M. when the appellant left to take the prosecutrix home. She testified that in approximately thirty minutes appellant returned to the laundromat where he had left them previously. She testified that they then went home and, after having gone to bed, were awakened by the police who arrested the appellant and took him to jail.
Leonard Williams denied that he had raped the prosecutrix, but admitted that he had gone to the cemetery and down a dirt road with her in his car. He maintained, however, that he only drove on the dirt road in order to make it possible for a truck, which was following, to pass. Further, he stated that while he was in the cemetery he had lectured his daughter about the evils of frequenting the "Mod Social Club" located in the Beulah Heights section of Baldwin County. It was appellant's testimony that, after he had "lectured" his daughter, he took her home, but she asked to go to "Miss Mary Goldsmith's house." According to the appellant, he let his daughter out of the car about a block or two from her home, in front of the Goldsmith's house. Appellant then drove to the "Mod Social Club" and had two beers, and, on his return trip to the laundromat, he saw his daughter walking towards the "Mod Social Club." The appellant then stopped the car, grabbed his daughter, the prosecutrix, by the arm, placed her in the car, and drove her to her home.
At the end of the State's testimony, the appellant made a motion to exclude the State's evidence, and, at the completion of the trial before the case was submitted to the jury, he made a motion for a directed verdict. Both these motions were denied and the question of the sufficiency of the evidence is properly before this court. We have examined the record and find that the *Page 494 
evidence was sufficient to present a question of appellant's guilt for the jury. Williams v. State, Ala.Cr.App.,335 So.2d 249.
 I
The appellant alleges that because his three previous felony convictions of assault with intent to murder occurred prior to the enactment of the Alabama Habitual Felony Offender statute §13A-5-9, Code of Alabama 1975, the trial court's use of these convictions to enhance punishment constituted a retrospective application of the Act which was constitutionally impermissible as an ex post facto law.
A similar claim was rejected by the United States Supreme Court in Gryger v. Burke, 334 U.S. 728, 68 S.Ct. 1256,92 L.Ed. 1683. There the Supreme Court stated:
 "Nor do we think the fact that one of the convictions that entered into the calculations by which petitioner became a fourth offender occurred before the Act was passed, makes the Act invalidly retroactive. . . . The sentence as a . . . habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one."
The United States Constitution and the Alabama Constitution prohibit the passage of ex post facto laws. Article 1, § 10, United States Constitution; Article 1, § 7, Alabama Constitution of 1901. The theory behind the prohibition is that no one should be punished for conduct when the law has not given him advance warning that the conduct was a criminal offense. Section 13A-5-9, Code, supra, does not punish the appellant for past conduct, but merely increases his punishment for his latest offense. See McDonald v. Massachusetts,180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542; Watson v. State, Ala.Cr.App.,392 So.2d 1274 (1980).
Therefore, it is our judgment that the Alabama Habitual Felony Offender Act, § 13A-5-9, supra, has not been unconstitutionally applied in a retroactive manner so as to make it an ex post facto law.
 II
Appellant contends that § 13A-5-9, supra, is unconstitutional because it violates the equal protection and due process clauses of the Fourteenth Amendment. Appellant claims that a "prosecutor is allowed excessive discretion in the application of the law," stemming from the first sentence of § 13A-5-9, supra, which, in pertinent part, provides the following:
 "(a) In all cases when it is shown that a criminal defendant has been previously convicted of any felony and after such conviction has committed another felony, he must be punished as follows." (Emphasis added.)
Appellant insists that because the statute does not require the district attorney to apprise the court of a defendant's prior felony record, the Act is susceptible to selective enforcement and, therefore, constitutionally infirm.
Nothing in the record, however, indicates selective enforcement of the Act. Moreover, the mere showing of selective enforcement of a statute, without more, is not constitutionally impermissible. In Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501,7 L.Ed.2d 446, the Supreme Court of the United States observed:
 "[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."
Appellant has alleged only that the Alabama Habitual Felony Offender Act may be selectively enforced. He has not alleged either that it was selectively enforced in this case, or that there are grounds to support a finding of deliberate discrimination. It is insufficient to show only that the law is enforced against some *Page 495 
but not others. A showing of actual and purposeful discrimination against each individual himself or against a class in which he falls is necessary. See Snowden v. Hughes,321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497; Moss v. Hornig,314 F.2d 89 (2d Cir. 1963).
We recognize that there are certain problems that occur in the application of any recidivist statute, one being the possibility that the prosecutor may be unaware of an accused's prior felony record at the time of sentencing. In addition, there is the problem that a prior conviction may contain defects, such as the absence of counsel for an indigent defendant. This factor alone will render many prior felony convictions unusable. See Burgett v. Texas, 389 U.S. 109,88 S.Ct. 258, 19 L.Ed.2d 319.
We also recognize that the argument of selective enforcement can be made in all cases where the prosecution has brought the criminal law to bear against an individual. Therefore, in the absence of any evidence to support the appellant's assertion of possible selective enforcement of the statute, no constitutional violation is shown.
It is our judgment, after examination of the record and transcript of evidence, that the judgment of conviction by the Baldwin Circuit court is due to be affirmed.
AFFIRMED.
All the Judges concur.