[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 192 
First degree rape; sentence: life imprisonment without parole.
The prosecutrix left her place of employment in Elba, Alabama at 10:10 p.m. on the evening of January 28, 1981. She drove alone from Elba toward Troy, Alabama, where she was to meet her fiance at the Holiday Inn. At the intersection of Highways 87 and 167, she came upon a 1978 Ford Thunderbird automobile stopped in the median of the road. The driver of the Thunderbird was waiving a flashlight and the prosecutrix stopped because she thought the Thunderbird belonged to a friend who lived in Troy.
Only when the driver of the Thunderbird walked up next to her vehicle's door did she realize he was not who she had thought him to be. The stranger, later identified as the appellant, asked her where she was going and then asked for a ride to Troy. The prosecutrix hesitatingly agreed and the man climbed in over her to the front passenger seat.
As the prosecutrix proceeded toward Troy, the appellant placed an object against her throat and ordered her to stop her automobile. He told her that as long as she followed his orders he would not hurt her. Appellant took control of the wheel and drove them back to the Thunderbird. There, the prosecutrix was made to hold the flashlight while appellant removed the Thunderbird's license plate, wiped out the automobile interior, and removed a clothes basket and placed it in her automobile.
They reentered her vehicle and appellant drove towards Troy until they reached Highway 231, where appellant turned and proceeded toward Brundidge. Appellant drove to a remote area in Pike County, pulled off the road, and instructed the prosecutrix to remove her clothes. She began to scream and refused, at which time appellant threatened to hurt her if she did not cooperate.
The prosecutrix removed her clothes, believing that appellant would kill her if she refused. Appellant unscrewed the interior light of the automobile, walked around to the victim's side of the car, and asked her if she had ever been raped before. She replied no and appellant said "well, you're about to be." He then pushed her back into the seat and raped her.
Afterwards, appellant allowed her to dress. He drove to a trailer park on 231 and got out of the vehicle. The prosecutrix drove on to the Holiday Inn and called her sister. When her fiance arrived, he called the police and then took her to the hospital. The police sealed the prosecutrix's vehicle at the Holiday Inn and subsequently located the Thunderbird at the intersection described by the prosecutrix. It was also sealed and then impounded by the police.
The prosecutrix identified appellant at trial as the man who raped her. She also testified on voir dire that she had chosen his picture from a police photographic array.
The prosecutrix also identified a photograph taken of her in the early morning of *Page 193 
January 29, 1981, which depicted a scratch on her throat made by the object which appellant used to threaten her.
Appellant does not question the sufficiency of the evidence. We will set forth only those further facts which are necessary to resolve the issues raised on appeal.
 I
Appellant contends the trial court erred in allowing into evidence appellant's fingerprint, which was obtained from a beer can found under the front seat of the impounded 1978 Thunderbird automobile. The can was found during a search of the previously sealed vehicle by a State trace evidence analyst on January 29, 1981.
Appellant asserts the State failed to prove a sufficient chain of custody to show that the Thunderbird, and therefore its contents, were in substantially the same condition at the time the search was made as when law enforcement officers first took the automobile into custody. Because the only break alleged to have occurred was at the beginning of the chain of custody, we will not detail the entire chain of custody in this opinion. See Sexton v. State, 346 So.2d 1177 (Ala.Cr.App.), cert. denied, 346 So.2d 1180 (Ala. 1977).
Robert Lewis, former Pike County Deputy Sheriff, testified he was called to the Holiday Inn parking lot in Troy, Alabama in that capacity in the early morning hours of January 29, 1981. There he processed the exterior of the prosecutrix's automobile for fingerprints and sealed the vehicle with evidence tape. From there he went to the intersection of Highways 87 and 167, where he located a 1978 Thunderbird which had been wrecked on the intersection's traffic island. Deputy Lewis also sealed this vehicle with evidence tape for processing later under better lighting conditions. After sealing the automobile, he had it towed from the scene.
On cross-examination, Deputy Lewis testified that when he first arrived at the scene where the Thunderbird had been wrecked, Trooper Bob Jones was standing there waiting for Deputy Lewis to arrive.
The State failed to call Trooper Jones to testify and therein, argues appellant, lies the impermissible break in the chain of custody of the automobile. Because Trooper Jones did not testify as to the condition of the vehicle from the time he arrived until the time Deputy Lewis arrived, appellant argues the State failed to prove that the vehicle and its contents were in substantially the same condition as at the time the chain began.
Appellant points especially to the testimony of Deputy Lewis that the Thunderbird doors were closed when he arrived at the scene. Testimony by the prosecutrix's fiance earlier in the trial indicated the doors of the Thunderbird had been open when he passed the Thunderbird earlier on the night of the rape. He testified that when his fiancee failed to arrive at the Holiday Inn at the appropriate time, he had driven from Troy toward Elba in search of her and had passed the Thunderbird en route.
Appellant argues this alleged hiatus in the chain left open the possibility that Trooper Jones picked up a beer can from along the road, threw it into the Thunderbird and then closed the vehicle's doors.
The testimony developed in the record indicates nothing about Trooper Jones's purpose in being at the scene of the wrecked Thunderbird. Neither does it reveal what action he took at the scene. Conversely, Deputy Lewis repeatedly testified that he was called into the case to secure the vehicle at the Holiday Inn. Upon learning of the second vehicle, he proceeded to its location and secured it also.
Trooper Jones's sole involvement, from aught that appears from the record, was simply to have been at the scene of the wreck in his role as a guardian of the State highways. Deputy Lewis did not testify as to any involvement of Trooper Jones in securing or handling the Thunderbird. The actions at the crime scene of Deputy Lewis constitute the only involvement of a law enforcer in the investigation shown in the record. We do not see this as a break in the chain of custody for the first investigating *Page 194 
officer to arrive at the crime scene in order to secure potential evidence. See, Andrews v. State, 370 So.2d 1070
(Ala.Cr.App.), cert. denied, 370 So.2d 1075 (Ala. 1979). Trooper Jones does not appear to have been involved in the custody of the vehicle at all, and appellant failed to develop any evidence otherwise at trial.
Even assuming arguendo that Trooper Jones was present in order to secure the automobile, we view his lack of testimony as a weak link in the chain which presented a question of credit and weight only, and not one of admissibility. Whitt v.State, 370 So.2d 730 (Ala.Cr.App. 1978), reversed on other grounds, 370 So.2d 736 (Ala. 1979). While all doubt could have been resolved by calling Trooper Jones, the evidence raised no discrepancy nor intimation that the evidence had been altered in any way by Trooper Jones. Whether or not the vehicle doors were closed or open was merely an evidentiary question for the jury to resolve. Waters v. State, 360 So.2d 358 (Ala.Cr.App.), cert. denied, 360 So.2d 367 (Ala. 1978).
The purpose in establishing a chain of custody is to show a reasonable probability that the vehicle and its contents were not tampered with. Bell v. State, 339 So.2d 96 (Ala.Cr.App. 1976). To warrant the reception in evidence of such an object or testimony concerning evidence gleaned from the object against an objection that a proper chain of custody has not been established, it is not necessary that it be proved to an absolute certainty, but only to a reasonable probability that the object is the same as, and not substantially different from, the object as it existed at the commencement of the chain. Sexton, supra. The State need not have negated the remotest possibility of alteration, substitution, or tampering with the evidence. Whetstone v. State, 407 So.2d 854
(Ala.Cr.App. 1981).
There is no positive evidence that Trooper Jones altered the vehicle or its contents after he arrived on the scene. In order for appellant to support his contention of a potentially illegal alteration by Trooper Jones, he should have shown Jones had both a motive and an opportunity to tamper with the vehicle. Bell, supra. No motive was shown, and the time lapse before Deputy Lewis arrived is unknown. Deputy Lewis's testimony revealed no involvement by Trooper Jones whatsoever in handling the evidence.
While Trooper Jones's testimony would have alleviated this problem, we do not find that the trial court abused its discretion in admitting the fingerprint evidence. The evidence established a reasonable probability that the object was not tampered with.
 II
During the sentencing hearing conducted pursuant to the Alabama Habitual Offender Act, the State introduced certified copies of minute entries of three prior convictions. Appellant objected to the introduction of one of those convictions because, although the minute entry indicated the contrary, he contended he was not represented by counsel. The conviction, based upon a plea of guilty, is reflected by the minute entry as follows:
 "This defendant, Larry Tate, together with his attorney, Honorable James M. Ivins, being before the Court in open Court and having been advised by the Court of the charge or offense embraced in the indictment, and having been further advised by the Court of the punishment for said offense provided by law, the said defendant, Larry Tate, with the consent and advice of his attorney, withdraws his plea of not guilty and pleads guilty to the offense of Unlawfully Selling Marijuana, as charged in the indictment. Upon defendant's plea of guilty, the Court adjudges him guilty of the offense of Unlawfully Selling Marijuana. Thereafter in response to an inquiry propounded to him by the presiding Judge if he had anything to say why the sentence of this Court should not be pronounced upon him, the defendant says nothing in bar or preclusion thereof. It is therefore the sentence of this Court and the judgment of this Court that the defendant be *Page 195 
sentenced to Two (2) years imprisonment in the penitentiary."
The minute entry indicated as well, that appellant was determined by the court to be an indigent on November 16, 1976, and was appointed counsel, in the person of Mr. James M. Ivins, on November 16, 1976. As is apparent, Mr. Ivins advised appellant concerning entering the plea of guilty.
Appellant's argument is two-fold. First, he argues that the conflict between the minute entry and his own testimony was of such a nature that it presented a question of fact which could only have been determined by a jury. Second, he asserts the trial court's reliance on the contested conviction violatedBurgett v. State of Texas, 389 U.S. 109, 88 S.Ct. 258,19 L.Ed.2d 319 (1967), which prohibits the use of prior convictions for the enhancement of punishment where it has not been affirmatively established that the appellant was represented by counsel or that he waived counsel at the time of the prior conviction.
Appellant is correct in asserting that a prior conviction without counsel, or an effective waiver thereof, cannot be used by the State as a valid prior conviction for enhancement purposes. Burgett, supra; Thompson v. State, 405 So.2d 717
(Ala.Cr.App.), cert. denied, 405 So.2d 721 (Ala. 1981). While the State bore the burden of proving a valid prior conviction in which appellant was represented by counsel, it met that burden and established a prima facie case by the introduction of the certified copy of the minute entry. Douglas v. State,406 So.2d 1051 (Ala.Cr.App.), cert. denied, 406 So.2d 1053
(Ala. 1981); Crittenden v. State, 414 So.2d 476 (Ala.Cr.App. 1982). When appellant then contended that the former conviction was invalid for enhancement purposes because of lack of representation, he bore the burden of presenting evidence in support thereof. Napier v. State, 344 So.2d 1235 (Ala.Cr.App.), cert. denied, 344 So.2d 1239 (Ala. 1977).
Appellant's testimony merely presented a disputed question of fact to be determined by the trial judge by a preponderance of the evidence. A.R.Crim.P.Temp. 6 (b)(3)(iii). The weight and credibility of appellant's testimony was for the trial judge to determine in the exercise of his sound discretion. See State v.Buckwold, 122 N.H. 111, 441 A.2d 1165 (1982). We find no reason to depart from the clear direction of Ala. Rules of Crim.Proc. — Temp. Rules (1980), Rule 6 (b)(3)(iii), and the generally recognized rule that the court and not the jury shall assess the period of imprisonment where the same is fixed by law. SeeJohnson v. State, 398 So.2d 393 (Ala.Cr.App. 1981). See also, 50 C.J.S. Juries § 78 (a) n. 5 (Supp. 1982).
 III
Appellant contends that a pretrial photographic array, at which the prosecutrix identified appellant's picture, was so suggestive that it tainted any subsequent in-court identification testimony. As well, appellant insists he had the right to have counsel present during the photographic identification in order to prevent the use of any unduly suggestive procedures by the police in conducting the photographic array.
The prosecutrix indicated during the suppression hearing voir dire that she was shown six pictures, each of a different individual, at the courthouse sometime prior to the preliminary hearing, possibly in October of 1981. The preliminary hearing was conducted on January 5, 1982. Appellant was indicted for this offense on January 27, 1982. The prosecutrix stated that three of the persons wore glasses. None of the six men were black. No one told her prior to the array that the suspect's picture was among those in the array. Neither did the police tell her that they thought they knew who committed the crime, nor that a suspect was presently in jail. She was aware that the purpose of the array was to pick her assailant from among the pictures.
The pictures were in a book, three to a page. No suggestion was made to her as to which one might be the assailant. She stated she took "a couple of minutes" to make her choice. The man she chose from the array matched her earlier description of the *Page 196 
assailant as having grey hair, gold wire rimmed glasses, and a sear on his lip.
The photographs from the array were not introduced by the State or appellant and therefore are not in the record for our review.
We point out first that there is no right to counsel at a pre-indictment photographic array conducted as part of the identification process for the purpose of permitting a witness to attempt to identify the perpetrator of the crime. Cross v.State, 351 So.2d 698 (Ala.Cr.App. 1977); Donilson v. State,350 So.2d 738 (Ala.Cr.App. 1977).
Secondly, there is no evidence present in the record to indicate a factual basis for appellant's argument that the prosecutrix's identification of appellant was the result of impermissibly suggestive procedures by the police in conducting the photographic array. Cross, supra. As well, there was ample evidence presented to indicate that the basis of the prosecutrix's in-court identification was her observation of appellant at the time of the crime. There was, therefore, an independent basis for her in-court identification of appellant.Jackson v. State, 414 So.2d 1014 (Ala.Cr.App. 1982).
 IV
Appellant's final contention is that the Alabama Habitual Offender Statute constitutes an ex post facto law in that it punished him again for prior convictions for which he has already served prison sentences. This issue has been previously decided adversely to appellant. As stated by Judge DeCarlo inWilliams v. State, 393 So.2d 492, 494 (Ala.Cr.App. 1981), this statute "does not punish the appellant for past conduct, but merely increases his punishment for his latest offense."
No error harmful to the substantial rights of appellant having been demonstrated on appeal, the case is affirmed.
AFFIRMED.
All the Judges concur.